EDWIN GROESBECK vs. CORA B. MATTISON and others.

43 547
73 359

June 27, 1890.

**Mortgage — Release to Grantee of Part Primarily Liable — Subsequent Bona Fide Purchaser.**—Where the holder of a mortgage releases to a grantee of the mortgagor that part of the mortgaged premises which, as between the mortgagor and his grantee, has become primarily liable for the payment of the debt, and another person, on the faith of such release, purchases the premises and pays a valuable consideration therefor, the fact that such release may have affected injuriously the lien of the mortgage on the remaining security, in a way not known or anticipated at the time by the holder of the mortgage, furnishes no ground for avoiding the release to the prejudice of the purchaser of the premises released.

**Same—Conveyance of Part of the Premises by Mortgagor—Covenant by Grantee to Pay Mortgage—Subsequent Release to such Grantee by Mortgagee with Notice.**—Where the mortgagor conveys to another a part of the mortgaged premises, the deed containing a provision that the grantee shall, as part of the purchase price, pay the entire mortgage, the part thus conveyed becomes, as between the mortgagor and his grantee, primarily liable for the payment of the debt; and if a holder of the mortgage, chargeable with actual notice of that fact, releases to the grantee of the mortgagor that part of the premises thus conveyed, which in value exceeds the amount of the mortgage, such release operates as a discharge of the mortgage upon the remainder of the premises retained by the mortgagor.

**Same—Statement in Release—Mortgagee Charged with Notice.**—The fact that the holder of the mortgage executes a release to one who is therein described as grantee of the mortgagor, conclusively charges him with notice of the fact that a conveyance has been made by the mortgagor to such releasee, and he is bound at his peril, before he executes a release, to ascertain the terms of the deed, either by examination of it or by inquiry of the mortgagor.

Action to foreclose a mortgage, brought in the district court for Hennepin county against Cora B. Mattison and husband, the mortgagors, and Peter T. Waters, and tried by *Rea*, J., who ordered judgment for defendants, which was entered, and the plaintiff appealed.

*R. H. Day* and *H. L. Enches*, for appellant.

*Ankeny & Merrill*, for respondents Mattisons.

*W. H. Norris*, for respondent Waters.

MITCHELL. J. The contest in this case was a triangular one. The defendants Mattisons and the defendant Waters each interposed a several answer to the complaint; the defendants Mattisons also alleging matters as a basis for affirmative relief against their codefendant, Waters, and to which Waters interposed a reply. The plaintiff interposed replies to the several answers of the defendants. The defendants each made a motion for judgment against plaintiff on the pleadings, which the court granted, and from that judgment plaintiff appeals. Therefore the only question involved in this appeal is whether sufficient of the allegations of the answers stood admitted by the plaintiff to entitle the defendants, or either of them, to judgment in their favor against him. But the triangular nature of the contest; the number of the pleadings; the fact that counsel do not always distinguish between what is in issue or what stands admitted as between two of the parties, and what is in issue or what is admitted as between one of these two and a third party; coupled with the fact that the replies of plaintiff are, as to some matters, very vague, or else purposely evasive,—have much complicated the case, and rendered it a task of some difficulty to determine just how the facts do stand on the pleadings. We shall first state such facts as are admitted by all parties.

In 1884 the defendants Mattisons executed to one Brookhouse a mortgage for $1,000 on the whole of lot 6, block 9, in Wright's addition to Minneapolis, of which the defendant Cora B. Mattison was then the owner. This mortgage was recorded on the day of its execution. On the 11th day of February, 1887, the Mattisons conveyed the front 75 feet of the lot to one Turner; it being expressly stipulated in the deed that Turner, as part of the purchase price, assumed and agreed to pay the mortgage. Mrs. Mattison still owns the remainder of the lot. By deed dated July 23, 1888, Turner sold and conveyed the 75 feet to one Swain; the deed likewise reciting and stipulating that Swain assumed and agreed to pay the Brookhouse mortgage. By deed dated July 23, 1888, Swain conveyed the 75

feet by warranty deed to defendant Waters, who paid therefor $1,000 in cash, and some real estate, which he conveyed to Swain. This sale was negotiated through one L. H. Cole, as agent for Swain. July 27, 1888, Brookhouse assigned his mortgage to Elmer E. Cole, the son of L. H. Cole; and on the same day Elmer E. Cole executed to Swain, "grantee of Mattison," a release of the 75 feet from this mortgage; and also on the same day, but subsequent to the partial release to Swain, assigned the mortgage to plaintiff, who brings this action to foreclose it against the whole lot. All these instruments, —to wit, the deeds from the Mattisons to Turner, from Turner to Swain, from Swain to Waters, the assignment from Brookhouse to Elmer E. Cole, the partial release from Cole to Swain, and the assignment from Cole to plaintiff,—were all filed for record on the same day, viz., July 27, 1888.

Turning, next, to the issues between plaintiff and defendant Waters, we find that Waters alleges that, in consideration of the conveyance to him from Swain, and in order to get a clear title of the property thus conveyed, and in consideration of a promise to have the mortgage referred to released, he paid over the purchase-money, and as a part of the same transaction Cole released the portion of the lot purchased by him; in short, that Waters bargained to get a clear title, and parted with the purchase-money on the strength of the contemporaneous release by Cole, which gave him the title he bargained for. Plaintiff admits, by not denying, the transaction on part of Waters as alleged, except that he says that Waters paid the $1,000 to L. H. Cole, the agent of Swain, and not to Elmer E. Cole,—a fact which, if true, is not material for present purposes. It is also true that he alleges that the release executed by Elmer E. Cole was made without consideration. In view of the admitted fact that Waters paid his money for a clear title, this allegation can only mean that no consideration for the release was received by Cole. But this is not important, for, if Cole saw fit, in order to enable Swain, or whoever owned the property, to give a clear title, to gratuitously execute a release, he had a perfect right to do so; and if, on the strength of that release, or of a promise that it should be given, Waters parted with the purchase price and accepted the conveyance, that would

constitute ample consideration for the release, and Cole could not be heard to claim, to the prejudice of Waters, that he himself received no consideration. Plaintiff also alleges that Waters, when he purchased from Swain, had knowledge of the covenants and stipulations in the deeds from Mattisons to Turner, and from Turner to Swain, by which this 75 feet became the primary fund for the payment of the mortgage. As these deeds were in Waters's chain of title, he is doubtless chargeable with notice of their contents. But, whatever might be the materiality of this fact as between the Mattisons and Waters, we fail to perceive its importance as between Waters and Cole or his assignee. Waters was not Cole's guardian, and owed him no active duty. All Waters was interested in was to get a clear title to the property he was buying, and if Cole saw fit to release it from the mortgage it was his own lookout to see that such a release would not affect his remaining security. There is no allegation that Cole executed the release under any mistake of fact, or that Waters was guilty of any fraud towards him. It is therefore impossible to see any ground upon which Cole could repudiate the release which he voluntarily executed, and upon the faith of which Waters has paid the purchase price of the property. The fact that it may have had an effect upon his remaining security which he did not anticipate at the time is certainly no ground for restoring the lien of the mortgage in his favor as against Waters. Plaintiff admits that he knew of this release when he purchased the mortgage. Therefore, certainly he is in no better position than Cole, his assignor. The trial court was therefore clearly right in ordering judgment against plaintiff in favor of Waters.

We next come to consider the pleadings between plaintiff and the Mattisons. The Mattisons allege in their answer that, when Cole executed the release to Swain, he had knowledge of the terms and contents of the deeds from them to Turner, and from the latter to Swain, and that plaintiff also knew all these facts when he bought the mortgage of Cole. They also set up *in hæc verba* the release from Cole to Swain, who is therein described as "grantee of Cora B. Mattison." Plaintiff in his reply admits the execution of the release by Cole to Swain; also that he knew of its execution when he bought the

mortgage; but alleges that he was informed and believed that it was executed with the knowledge and consent and in the interest of the Mattisons, and that Mrs. Mattison was the owner of the whole lot. He admits the execution and terms of the deeds from the Mattisons to Turner, and from Turner to Swain, but denies that he had any knowledge of them when he bought the mortgage, and alleges that he has no knowledge or information sufficient to form a belief as to whether Cole knew of them when he executed the release to Swain. It is not denied that the value of the 75 feet released to Swain was equal to and in excess of the amount of the mortgage. It cannot be doubted that, upon the facts of the case, the 75 feet became, as between the Mattisons and Turner or Swain, primarily liable for the payment of the mortgage debt, for which the remaining part of the lot owned by the Mattisons occupied the position of surety, and that if a holder of the mortgage, chargeable with notice of that fact, released the 75 feet, it would operate as a release of Mattisons' part, the former being sufficient in value to satisfy the whole debt. The only question remaining, therefore, is whether enough is admitted in the pleadings to charge Cole with such notice at the time he relinquished his lien on the 75 feet.

The plaintiff invokes the familiar doctrine that a mortgagee whose mortgage is recorded is not bound to take notice of subsequent conveyances or incumbrances by the mortgagor; and that the record of such subsequent conveyances of a part of the mortgaged premises is not constructive notice to the mortgagee. The trouble is that, while this is good law, it does not cover this case. Had the Mattisons conveyed to Turner by warranty deed, so that the remaining part of the lot would have been primarily liable for the mortgage, and then the mortgagee without actual notice of this conveyance had executed to the Mattisons a release of their part, the rule invoked would apply. But in this case Cole released, not to the Mattisons, but to Swain, "grantee of Cora B. Mattison." By the very terms of his release, he stands conclusively charged with actual notice of the fact that Mrs. Mattison had made a conveyance of the 75 feet through which Swain had acquired title; and, knowing that fact, he was bound to ascertain the terms of that conveyance, or execute the release at his peril.

It is no excuse that the deed may not then have been on record. He knew that such a deed had been executed, and he was bound to call for it and inspect its provisions, or take the chances of not doing so. The Mattisons had not requested him to execute any release, and, if he assumed to execute one to their grantee, known to him to be such, good faith required him first to ascertain from them, or from their deed, whether it would prejudice their rights. Plaintiff stands in no better position than his assignor, Cole, especially as he knew of the release to Swain when he purchased the mortgage. Through inadvertence or ignorance of the law he may have made an unfortunate purchase, but, whatever other remedy he may have, he certainly has none, upon the admitted facts, against the defendants.

Judgment affirmed.