MARGUERITE ANDERSON v. MINNESOTA LOAN & TRUST COMPANY.[1]

June 11, 1897.

Nos. 10,487—(146).

### Mortgage Foreclosure—Right of Subsequent Lien Holder to Rents and Profits.

*Held,* upon the facts found, the tenth finding being a mere conclusion of law, that, as between the mortgagors and the second mortgagee, the latter continued to be mortgagee in possession until the expiration of the period of redemption from the foreclosure of the first mortgage, and that as such he was entitled, subject to the rights of the first mortgagee under the agreement of July, 1894, to apply the rents and profits to the satisfaction of his mortgage until it was reduced to $40,000.

### Same—Accounting.

Inasmuch as under no circumstances would the rents and profits be sufficient to reduce the second mortgage to that sum, and as the plaintiff, the assignee of the mortgagor's interest in the rents and profits, has no interest in the mortgaged premises, and is not liable for any of the incumbrances on them, she is not in position to object to the terms of the accounting for the rents and profits as allowed and adjusted by the trial court.

### Same—Assignment—What Constitutes.

The second mortgagee obtained a judgment and decree of foreclosure, which, however, was void, by reason of want of due service of the summons. He assigned as collateral security to the intervening bank this judgment and decree, and all right, title, and interest which he had therein, and in and to the debts therein described, and in and to the mortgaged premises which might be acquired by said decree, and in and to the proceeds of any sale thereunder. *Held* that, notwithstanding the invalidity of the judgment of foreclosure, this operated as an assignment of the mortgage and debt secured thereby, and of the rents and profits to which he was entitled, as mortgagee in possession, as security for the payment of his mortgage.

### Same—Waiver of Right Acquired.

Also, that the bank did not waive or release this assignment by subsequently bringing suit on the debt as security for which the assignment was made, and serving a garnishee summons on the party in possession of the rents and profits.

[1]Reported in 71 N. W. 665, 819.

Action by Marguerite Anderson against the Minnesota Loan & Trust Company to recover a surplus remaining in its hands as mortgagee in possession during the year of redemption from foreclosure, such surplus and their right thereto having been assigned to plaintiff by the mortgagors. There had been two mortgages on the property in question, both executed by the same parties as mortgagors, and the second mortgagee had been for some time in possession by agreement with them. Previous to the foreclosure of the first mortgage by defendant, it had been placed in possession by agreement with the second mortgagee, and plaintiff contended that his right as mortgagee in possession terminated at that time. C. W. Burdic and the National German-American Bank intervened, both claiming under assignments from the second mortgagee. The court below found for plaintiff in its tenth finding of fact to the effect that the second mortgagee's surrender of the premises to the first mortgagee terminated his occupation as mortgagee in possession with reference to the mortgagors.

From an order of the district court for Hennepin county, Jamison, J., denying a new trial after findings for plaintiff for $2529.95, plaintiff and both intervenors appeal. Reversed as to the bank, with directions, and a subsequent application for reargument denied.

*Smith, Pulliam & Smith,* for appellant Anderson.
*Clark & Wingate,* for appellant Burdic.
*E. W. Gray,* for appellant National German-American Bank.
*M. B. Koon* and *Wm. J. Hahn,* for respondent.

BUCK, J. In March, 1889, Mary Barteau and her husband, William L. Barteau, owned two vacant lots in the city of St. Paul, upon which they proposed to build a six-story apartment house, and which will be hereinafter alluded to as "Hotel Barteau." For the purpose of erecting this hotel, they executed to the Minnesota Loan & Trust Company, defendant, a mortgage or trust deed of $100,000 on the property to secure the payment of 100 bonds, of the amount of $1,000 each, with interest at the rate of 6 per cent. per annum. This mortgage was duly recorded in the office of the register of deeds of Ramsey county, and was a first mortgage lien upon said

property. Before the completion of the building, some litigation arose, which stopped the construction of the building, when one Hiram Backus, who was a surety on the bond of the contractor engaged in the construction of said hotel, came to the assistance of the contractor, Barber; and for this purpose he advanced his own money, to the amount of over $53,000, to complete the building. As security for so doing, the Barteaus executed to him and the contractor, Barber, a deed of the premises, absolute in form, but in fact a mortgage; and, to make the security more perfect, these grantees were placed in possession of the property as mortgagees in possession, where they continued until April 1, 1891, when all the parties had a settlement, and the property was deeded back to Mrs. Barteau, and a mortgage for $53,000 executed on such property by the Barteaus to Backus, Barber ceasing to have any further connection with the property.

Contemporaneously with the making of this mortgage, a written agreement between the Barteaus and Backus was made, reciting most of the foregoing facts, and that Backus was a mortgagee in possession, and agreeing that he might so remain in possession until such time as his said mortgage so held by him was reduced by payments thereon to the sum of $40,000, when he would surrender possession of said premises to Mary Barteau, or her legal representatives, except that the rents and income from said premises, to the amount of $490, should first be applied to a balance due Backus in excess of the mortgage of $53,000; also, to pay taxes on said premises for the year 1890, insurance on the building, running expenses incident to the management and control and keeping in repair and proper condition of said hotel, and to pay interest on the first mortgage of $100,000 held by the loan and trust company; and then the excess of rents and income so accruing from said premises were to be applied by Backus to reduce the amount of his mortgage. The agreement also further provided that Mrs. Barteau might occupy, as tenant of Backus, two apartments in said hotel, upon certain conditions; and, if she so requested, Backus was to employ the husband, Barteau, to collect rents and have the superintendency of the hotel, for a designated salary; such employment to last as long as he faithfully performed his duty in such capacity. The money so collected by Backus was to be his own money, but

part thereof to be distributed as we have stated, and his acts to be those of a mortgagee in possession.

This agreement was the only security which Backus held for the large indebtedness of the Barteaus to him, amounting to $53,-000. Subsequently, and on October 4, 1893, Backus and the Minnesota Loan & Trust Company, as trustee, entered into a contract whereby the former surrendered to the latter the possession of said premises, and, as between them, the trustee was to have the accruing rents, as there was default in the payment of interest on the bonds secured by said trust deed; and by said agreement Backus agreed to act as agent of said trust company to take charge of said building and collect the rents accruing therefrom for $100 per month, and employ one C. W. Burdic as custodian of said building, and he agreed that he would foreclose his mortgage upon said building, and push the same to completion as rapidly as possible. It was also agreed that the Barteaus should possess a suite of rooms in said building until January 1, 1895, and that Marguerite Anderson, the plaintiff herein, should have one-half the gross income received on account of the renting of the odd rooms in said building then furnished by her until said January 1, 1895; she to pay regular rent for the suite of rooms then furnished by her, or, if the odd rooms could be rented for one year or more, she should vacate the same and move into other odd vacant rooms. It was further agreed that, if Backus acquired title under his foreclosure proceedings, the trust company would use its best endeavor to secure from the bondholders an extension of time of payment thereof by Backus until April 1, 1894.

To all of these terms the Barteaus consented in writing. Backus foreclosed his mortgage, but such foreclosure was held void, by reason of certain irregularities, and his mortgage has never been paid. The defendant loan and trust company foreclosed its mortgage by sale of the premises July 24, 1894, for the sum of $110,000, leaving a deficiency of $1,227.04; the defendant company being the purchaser of said premises at the foreclosure sale. About July 10, 1894, by an agreement entered into between Backus, the loan and trust company, the Barteaus, and this plaintiff, the agreement of October 4, 1893, was modified as to certain rooms and rents therefor, but such modification was not in any manner to affect

the right of Backus to enforce the original agreement against the plaintiff or the Barteaus by reason of defaults then existing on the part of the Barteaus in the payment of rent. We are of the opinion that under the modified agreement and the other agreements, and the conduct of the parties, it was understood and intended that Backus should surrender up his rights in the premises, either as mortgagee in possession or otherwise, under the agreement of October 4, 1893, only as to the loan and trust company. This agreement made its rights superior and paramount to his, but as to all other parties he retained the rights of a mortgagee in possession. Therefore the tenth finding of fact by the trial court upon this point we deem a mere conclusion of law, and unwarranted by the facts.

The defendant company continued to collect the rents during the year for redemption, in accordance with the understanding and agreement of all of the parties interested in said property. The defendant, while in possession of said property during the year for redemption, paid out, on one-year insurance policies taken upon the property at different times, the sum of $1,724. It also paid $175 for a storm door, and $100 to an employe of Backus, and the necessary expenses in the operation of said building. The insurance policies were taken in the name of, and for the benefit of, Mary Barteau, and paid by defendant without objection by her, or any one interested in said hotel. Upon an accounting the trial court found that there remained in the defendant's hands, unaccounted for and unapplied, the sum of $2,529.95. The property was never redeemed from the foreclosure sale, and after the expiration of the time for such redemption, viz. on September 4, 1894, the Barteaus made an assignment of this surplus to the plaintiff, who is their niece and adopted daughter, and this action was brought by her to recover such surplus.

Before the commencement of this action, Backus assigned to the National German-American Bank, intervenor herein, as collateral security, the indebtedness to him herein set forth from the said Barteaus, and subsequently assigned said indebtedness absolutely to C. W. Burdic, the intervenor herein. About October 3, 1895, after the expiration of the year for redemption, the said de-

fendant, as trustee, at the instance of the bondholders and persons for whose benefit said property was purchased at said foreclosure sale, paid to the county treasurer of Ramsey county taxes duly assessed upon said premises to the amount of $4,208.21, which had been duly assessed on said premises for the years 1891 and 1892. Thus three parties are claiming the right to the surplus, viz. the plaintiff, as assignee of the Barteaus, and the National German-American Bank, and C. W. Burdic, each claiming a superior and paramount right to this surplus fund.

The tenth finding being, as already suggested, a mere conclusion of law, it necessarily follows from the facts found that, as between Backus and the Barteaus, the former continued to be a mortgagee in possession up to the time of the expiration of the period of redemption from the foreclosure of the trust company's mortgage. While the agreement of October, 1893, gave the trust company, as first mortgagee, certain rights, yet neither that agreement, nor the modification of it in July, 1894, terminated, as between the Barteaus and Backus, the position of the latter as mortgagee in possession. As such, Backus was entitled, subject to the rights of the trust company, to the rents and profits of the mortgaged premises to apply on his mortgage until it was reduced to $40,000. Even if the trust company had been charged by the court with everything which plaintiff claims it should be charged, the amount of rents and profits in its hands would not be sufficient to reduce Backus' mortgage to that amount. Hence under no circumstances can plaintiff be entitled to any part of funds in the trust company's hands. This being so, and plaintiff having no interest in the mortgaged premises, and not being personally liable for any of the debts and incumbrances, she is not in position to object to the settlement and adjustment of the trust company's account; and, as no one else is objecting, it is immaterial whether that settlement and adjustment were correct or not. We assume, therefore, that the pivotal point is as to which of the intervenors is entitled to the surplus. Neither one objects to the application of so much of the surplus fund made by the trustee, so far as it paid the insurance, expenses, and taxes, but each is contending for the amount of the surplus, of $2,529.95.

On January 16, 1894, Backus and one Lovering were indebted to the intervenor the National German-American Bank in the sum of $9,170.57, evidenced by a promissory note made by them; and to secure the payment of this note, and for value, Backus, Lovering joining him, sold and assigned to the National German-American Bank, as collateral security, a certain judgment and decree, and all the right, title, and interest which Backus and Lovering had therein, and in and to the debts in said decree referred to, and to the real estate in said decree described, and in and to all the right, title, or interest they or either of them might acquire in and to said property and real estate by virtue of said decree, and in and to the proceeds of any sale that might be made thereunder. The decree and debt so referred to is the one made upon foreclosure proceedings of Hiram Backus against the Barteaus upon his second mortgage, and upon which there was adjudged to be due the sum of $54,605.75. This decree and the judgment thereon, having been improvidently rendered, were subsequently vacated.

Burdic, also another intervenor, claims under an assignment made by Backus dated November 28, 1895, which purports to assign any surplus of rents, if any, arising from the sale under the foreclosure by the defendant loan and trust company. The assignment to the bank was in writing under seal, contained the proper names of the parties, expressed a consideration, and purported to assign a judgment and decree in foreclosure, with the debt secured thereby. We think that this assignment was broad enough to pass all of Backus' rights in the mortgage and debt it secured thereby, and consequently passed his right to any surplus there might be after satisfying the first mortgage. See 2 Freeman, Judgm. § 425, and Kent v. Chapel, 67 Minn. 420, 70 N. W. 2. Of course, the assignment being made as collateral security, only so much of the surplus could be held by the bank as would be sufficient to pay the debt for which it was so assigned; but, as the surplus was in amount far below the amount of such debt, this question is of no practical importance in this action.

The intervenor Burdic claims that the intervenor bank has waived its rights to the fund under the assignment, because it commenced garnishee proceedings for the same debt. While gar-

68 M—32.

nishee proceedings are a species of attachment, they do not effect a specific lien upon any particular property of the garnishee. The only garnishee proceedings in this case was a summons served on the garnishee, and the proceedings were then dismissed by the plaintiff. Plaintiff might have commenced these proceedings with a view to reach a fund, property, money, or effects in the hands of the garnishee entirely different from that which it held as trustee, as a surplus, on foreclosure of the first mortgage. The affidavit in garnishment no way alludes to or describes such surplus fund, nor the capacity in which it held the "property, money, and effects in its hands and under its control." As the record does not show that the bank was attempting to reach this particular fund or debt by the garnishee proceedings, the authorities cited by counsel for the intervenor Burdic are not in point, however correctly they may state the general rule of law.

It is proper, before closing this opinion, to say that there is no merit in the contention of the plaintiff's counsel that the defendant was in possession of the premises, during the year for redemption, as a trespasser. It was there by the consent and acquiescence of all the parties in interest, and they are in no position to assail it upon such ground.

Our conclusion, therefore, is that neither plaintiff nor Burdic has any right to the fund in controversy, that the intervenor the National German-American Bank is entitled to such fund, and that the order denying the motion for a new trial should be reversed, and the trial court directed to enter judgment absolute for the said National German-American Bank for the sum of $2,529.95, with interest from July 24, 1895.

So ordered.

### On Motion for Reargument.

### June 28, 1897.

PER CURIAM. The principal ground upon which plaintiff asks for a reargument is that in holding that Backus was entitled, as mortgagee in possession, to the rents and profits of the mortgaged premises, our decision is in conflict with Cullen v. Minnesota, 60 Minn. 6, 61 N. W. 818. In that case, the mortgagee, who had never been in possession, was asserting his right to collect the

rents, and apply them upon the mortgage debt, under a provision to that effect, still wholly executory, contained in the mortgage. In the present case the mortgagee, with the consent and authority of the mortgagors, subsequently reaffirmed and ratified for a valuable consideration, entered and remained in possession for the purpose of collecting the rents, and applying them on his mortgage. The distinction between holding that an executory agreement is nonenforceable, because in contravention of the policy of the statute, and holding that party is entitled to retain what he has already received under an agreement which has been fully executed, with the consent of the mortgagors, is what differentiates the case cited from the present one.

The applications of the plaintiff and of the intervenor Burdic for a reargument are both denied, and stay of proceedings entered herein vacated.