ANNA E. HOWARD v. JOHN BURNS.

July 15, 1898.

Nos. 11,173—(220).

**Purchase of Mortgaged Real Estate—Application in Satisfaction of Mortgage.**

Rule applied that the purchasers of mortgaged premises are entitled to have them applied to the satisfaction of the mortgage in the inverse order of alienation.

**Same—Partial Release from Mortgage—Notice to Mortgagee of Equities in Third Persons.**

The holder of the mortgage, knowing that a third party has acquired an interest subsequent to the mortgage in a portion of the mortgaged premises, is put upon inquiry as to the equities of such third party before gratuitously releasing the other portion. If he fails to make such inquiry before he so releases, and the portion so released is sufficient in value to pay the whole mortgage debt, and such third party was entitled to have that portion applied first to the payment of the debt, the mortgage is, in equity, satisfied as to his portion.

**Same—Findings of Court Sustained by Evidence.**

But where for several years portions of the mortgaged premises, sufficient to pay the whole debt, were from time to time released on payment of pro rata shares of the mortgage, and the third party having such an equity failed to assert it, or warn the holder of the mortgage of her equity, although she had business dealings with him in regard to her portion, *held*, the trial court was justified in finding that the holder of the mortgage was not negligent in failing to make such inquiry, and that the mortgage is not, in equity, satisfied as to her portion.

Action in the district court for Hennepin county to have a certain mortgage declared paid and satisfied, and to have a foreclosure thereof declared void. The cause was tried before Lancaster, J., without a jury, who found for defendant. From an order denying plaintiff's motion for a new trial, she appealed. Affirmed.

*Alvord C. Egelston*, for appellant.

It is not necessary that the holder of a mortgage should have actual notice of the equities of a purchaser of a portion of the mortgaged premises. All that such purchaser need show is that the

mortgagee, when he released a portion of the mortgaged premises from the lien of the mortgage, had notice sufficient to put him on inquiry as to the equities of the purchaser. Groesbeck v. Mattison, 43 Minn. 547; Howard v. Halsey, 8 N. Y. 271; Turner v. Flenniken, 164 Pa. St. 469; Dewey v. Ingersoll, 42 Mich. 17; Hall v. Edwards, 43 Mich. 473; 1 Jones, Mort. § 723. It is well settled that the purchaser of a past-due mortgage takes it subject to all equities, and especially where there is no notice showing that he purchased without notice of the equities. Hostetter v. Alexander, 22 Minn. 559; Redin v. Branhan, 43 Minn. 283; Moffett v. Parker, 71 Minn. 139; Trustees v. Wheeler, 61 N. Y. 88.

*Cross, Hicks, Carleton & Cross*, for respondent.

The mortgagee may release the whole or any part of his security to the mortgagor, unless third persons have acquired interests in the property whereby equities have arisen in their favor which would be adversely affected by such releases, in which case the mortgagee must not make such release if he has knowledge or notice of such equities. But the proof of such knowledge must be clear and definite. Lloyd v. Banks, L. R. 3 Ch. App. 488; Taylor v. Maris, 5 Rawle, 51; McIlvain v. Mutual, 93 Pa. St. 30; Schrack v. Shriner, 100 Pa. St. 451; Kendall v. Woodruff, 87 N. Y. 1; James v. Brown, 11 Mich. 25.

CANTY, J.

On December 1, 1881, one Jordan was the owner of 50 lots in a certain platted addition in Minneapolis, and on that day mortgaged all of the same to one Beard to secure the payment of the sum of $10,000, then owing by Jordan to Beard. On January 13, 1882, Beard assigned the mortgage to one Jones. On January 26, 1890, Jones died intestate, and on August 17, 1897, his administrator assigned the mortgage to defendant.

On May 12, 1882, Jordan executed to Beard a second mortgage on some of the lots, which mortgage was a specific lien for $100 on one of said lots, to wit, lot 8 in block 9. On said May 12, 1882, Jordan conveyed by warranty deed said lot 8 to one Woodard, subject to the lien of said $100 of said last-named mortgage, but warranted the lot free and clear of all other incumbrances. On September 11, 1883,

Woodard conveyed the lot to plaintiff subject to said last-named mortgage and a third mortgage placed on the lot by him. Said first-named mortgage was a "blanket" mortgage, but between December 16, 1886, and November 5, 1889, Jones released 34 of the 50 lots from the lien of this mortgage. Said lot 8 was not one of these 34. The value of the lots so released exceeded the total sum due on the mortgage.

Undoubtedly, the conveyance by Jordan of lot 8 with warranty against the incumbrance of this mortgage gave plaintiff an equitable right to require the mortgagor first to exhaust the lien of the mortgage on the other portions of the mortgaged premises then owned by Jordan, before resorting to her lot; and, if Jones was chargeable with knowledge of plaintiff's equity when he released such other portions of the mortgaged premises, this will, in equity, release plaintiff's lot also from the lien of the mortgage.

Plaintiff claims that at the time Jones released said 34 other lots he was chargeable with knowledge of her said equity; that, therefore, by releasing the mortgage on the 34 other lots, Jones satisfied it as to her lot; and she brought this action to have it so declared and adjudged. On the trial the court found that Jones was not chargeable with such knowledge, and ordered judgment for defendant. From an order denying a new trial, plaintiff appeals.

Appellant contends that notice to Jones which would put him on inquiry as to her rights is sufficient to charge him with knowledge of her rights, while respondent contends that nothing short of actual knowledge of her rights is sufficient for that purpose.

Substantially all the evidence as to the notice to or knowledge of Jones is the following: E. C. Chatfield testified that about ten years prior to the time of the trial he was the attorney of plaintiff in matters connected with lot 8. He further testified:

"I certainly went to Judge Jones in the capacity of the attorney for Mrs. Howard, and stated to him her interest in the property as being that of owner of the fee, and sought to have—my recollection is I sought to have—a foreclosure of the mortgage deferred, or any action deferred that would impair her interest; something of that sort. It is a long time ago, and I could not, of course, give the words that I said, or anything of that kind. I had forgotten the whole transaction until that abstract recalled to me that fact."

He further testified that he might have gone to Jones to see about getting a release of plaintiff's lot.

The second mortgage above mentioned, $100 of which was made a specific lien on this lot, was on May 12, 1882, also assigned to Jones, together with the note accompanying the same. While Woodard owned the lot, he made a payment to Jones of interest on this $100 of the mortgage, which payment was indorsed on said note as follows:

"$5.56. Paid by J. S. Woodard interest on lot 8, block 9, East Side addition, from January 1, 1883, to September 15, 1883. April 8, 1884.                                   E. S. Jones."

After plaintiff purchased the lot, she made two payments on said second mortgage, for which Jones gave her the following receipts:

"Minneapolis, Minn., Oct. 5, 1886.
"Received of Mrs. A. E. Howard fifty ($50) dollars to apply on her note for $100 to E. S. Jones on lot 8, block 9, Menage's supplement.                                   E. S. Jones."
"Minneapolis, Minn., Oct. 15, 1886.
"Received of Mrs. A. E. Howard twenty-five dollars ($25.00) to apply for release of lot 8, block 9, Menage's supplement to East Side addition.                                   E. S. Jones."

It appeared by the evidence that Jones held a number of mortgages made by Jordan on property on the east side. We are clearly of the opinion that it conclusively appears from the evidence that Jones had notice that Woodard first, and then plaintiff, was the owner of this lot, or had acquired some interest in it, since the execution of said first mortgage. As a general rule, such notice is sufficient to put the mortgagee on inquiry, and charge him with knowledge of the equities of a third party who purchased a part of the mortgaged premises after the execution of the mortgage. 1 Jones, Mort. § 723, and cases cited; Turner v. Flenniken, 164 Pa. St. 469, 30 Atl. 486; Dewey v. Ingersoll, 42 Mich. 17, 3 N. W. 235; Hall v. Edwards, 43 Mich. 473, 5 N. W. 652. See also Groesbeck v. Mattison, 43 Minn. 547, 46 N. W. 135.

But Jones did not release the 34 lots gratuitously. The evidence tends to prove that he was paid a pro rata share of the mortgage indebtedness for every lot so released, except perhaps one or two

lots.   In the absence of any evidence to the contrary, it must be presumed that each of the 50 lots is of the same value.

We are of the opinion that Jones was not called upon to use as much care when releasing those 34 lots for their pro rata share of the mortgage debt as he would be if he was releasing them gratuitously.   There would be much more danger of doing injury to third persons in the latter case than in the former.   It is quite common, in speculative times at least, for third parties to take conveyances of portions of mortgaged premises subject to a pro rata share of the mortgage debt, and in such case it will not injure such parties to have other portions of the mortgaged premises released on payment of the like pro rata share of the mortgage debt.   But it is quite uncommon for a third party to take a conveyance of a part of the mortgaged premises, pay the full consideration for the land, and trust to the covenants of warranty to protect him from the mortgage.   It is also rather uncommon for a third party to take a conveyance of a part of mortgaged premises subject to less than a pro rata share of the mortgage.

Jones was bound to use reasonable care.   The maxim, "Sic utere tuo ut alienum non lædas," applies.   That maxim is quoted in most of the cases, and held to lay down the principle here involved.   As applied to such a case, it means that the holder of the mortgage shall take proper or reasonable care so to use his own as not to injure the right or property of another.

Did Jones use such care?   We are of the opinion that under the circumstances the trial court was warranted in finding that he did. While it must be held that he knew that plaintiff had acquired rights in the lot, there is no evidence that he knew of her equity, growing out of the covenant against the incumbrance of his mortgage.   While it must be held conclusively that his knowledge was such that he was bound to inquire, before taking a step so dangerous to the interests of such a third party as that of releasing gratuitously his mortgage on a part of the premises, yet we are of the opinion that the trial court was warranted in finding that he acted with reasonable care in releasing a part of the mortgaged premises for a pro rata share of the debt without making such inquiry.   Reasonable care is care which is commensurate with the danger, and

surely it cannot be said that his acting without inquiring would be as dangerous to the rights of others in the latter case as in the former, or that a person having due regard for the rights of others would be as likely to make such inquiry in the latter case as in the former.

The order appealed from is affirmed.