## MINNEAPOLIS INVESTMENT COMPANY v. NATIONAL SECURITY INVESTMENT COMPANY AND ANOTHER.[1]

June 21, 1929.

No. 27,379.

*Ohman, Fryberger & Wangaard,* for appellant.
*Brill & Maslon,* for respondent.

HOLT, J.

The defendant Harry Harper & Associates, Incorporated, appeals from the order denying a new trial.

The action is to foreclose a second mortgage for $112,500 on a property in Minneapolis known as the Antlers Apartments. There is a first mortgage of nearly $70,000 unpaid. Appellant took a

[1]Reported in 226 N. W. 189.

third mortgage of $12,000. The property is estimated to be worth no more than $130,000. It is thus seen that there is no hope for appellant to realize anything out of the security by redemption, nor any inducement to pay delinquent taxes or defaulting interest and instalments upon the prior mortgages and tacking the amount so paid to its mortgage, as authorized by G. S. 1923, §§ 9632 and 9633, as amended, 2 Mason, 1927, id. It does not desire to do so in this action. Its sole contention in the court below and here is that plaintiff, by releasing and discharging its mortgagors, Jerry E. Vincent and wife, from their personal obligation to pay the debt as stipulated by their note and mortgage, without the consent of appellant, the latter's mortgage is stepped up or given priority over plaintiff's. It also claims that since the officers and principal stockholders of the plaintiff and of the defendant National Security Investment Company, a corporation, in whom the title to the property now is, are practically the same, there has been a merger of the second mortgage and the title in the same party which wipes out the mortgage, leaving appellant's mortgage subject only to the first mortgage.

The facts leading up to and surrounding the giving of the release are these, in short: After the Vincents acquired the property and executed the mortgage to plaintiff, they conveyed to the Antlers Apartment Corporation. A few months thereafter the Antlers Apartment Corporation executed the mortgage to appellant, which was made subject in express terms to the two prior mortgages. Default occurred in the third mortgage resulting in foreclosure by action. The amount found due was $12,838.90. Appellant bid the premises in for $11,503.26, leaving it entitled to a deficiency judgment of $1,335.64. The time of redemption will expire shortly. Default was also made in the payments falling due under the first and second mortgages. Plaintiff made good the default in the first, tacking the same to its own, and then brought this action to foreclose. Just prior to so doing the Vincents started suit, feigned or real, against plaintiff, for damages in the sale of the property to them. Plaintiff desired possession during the year of redemption,

since the security was inadequate and the rents were large. To that end a settlement was made with the Vincents whereby in consideration of $8,500 to them paid and a release from their personal obligations upon the note and mortgage, they procured a deed to the property from the Antlers Apartment Corporation and then conveyed it to the defendant the National Security Investment Company, which at once surrendered possession to plaintiff. Both of the last named deeds were made subject to all encumbrances of record. When plaintiff released the Vincents from their personal obligations, it did so with full knowledge of appellant's mortgage.

We do not think the statutory remedy given by G. S. 1923, §§ 9632 and 9633, as amended, 2 Mason, 1927, id. took away the equitable right of subrogation possessed by a junior mortgagee in respect to prior encumbrances. When the situation presents itself for the exercise of the right by payment of a prior mortgage, the one who so pays is entitled to step into the rights of the prior mortgagee as they existed when the mortgage was given, provided no rights had been released before such prior mortgagee received knowledge of the existence of the subsequent encumbrance. A mortgagee may resort to the security and also to the personal obligation of the mortgagor for payment of the debt. He may pursue either or both remedies. And so long as no subsequent encumbrances exist to his knowledge, he may relinquish either right or remedy and retain and enforce the other. But with knowledge of a subsequent mortgagee whose equitable right of subrogation may not be diminished, a release by the prior mortgagee of the mortgagor's personal obligation to pay the debt may subordinate the prior mortgage to the subsequent one. 2 Jones, Mortgages (8 ed.) § 899; Thomas, Mortgages (3 ed.) §§ 405 and 406. Two cases from an able court so hold. Coyle v. Davis, 20 Wis. 593 (564); Sexton v. Pickett, 24 Wis. 346. The pertinent paragraph of the syllabus in the second case, based largely upon the principles announced in the first, reads:

"A mortgagee who diminishes the security of a second mortgagee, by releasing the mortgagor's personal liability, if he does not ab-

solutely discharge the premises from the lien of his mortgage, as in the case of a subsequent purchaser, at least subordinates his lien to that of such second mortgagee."

Had the Vincents executed appellant's mortgage also, these decisions would have been decisive against plaintiff. They appear to us to state a correct equity principle. It is true that neither has ever been cited by any appellate court, so far as we have been advised. But it is equally true that no reported decision has disapproved either one. The principle was involved to some extent and discussed in Johnson v. Williams, 4 Minn. 183 (260); Groesbeck v. Mattison, 43 Minn. 547, 46 N. W. 135; Travers v. Dorr, 60 Minn. 173, 62 N. W. 269; Howard v. Burns, 73 Minn. 356, 76 N. W. 202.

But there is a difference between the case at bar and the Wisconsin cases cited. In the first, Coyle had a warranty deed from the mortgagor to a part of the mortgaged premises; and in the second the same person had given both the first and second mortgage. In such case, if the mortgagor had been compelled to pay the first mortgage he ought not to be subrogated so as to apply the land to reimburse himself as against the second mortgage executed by him to secure the debt he agreed with that mortgagee to pay. Both the first and second mortgage debts were his to pay. In the instant case the Vincents were under no obligation to pay appellant's mortgage; and had they been compelled to pay plaintiff's by reason of their personal obligation, they would have had the right to subrogation to the security, and appellant would have no equity to urge against their so doing ahead of its mortgage, which they were under no obligation to pay. We therefore conclude that the release of the Vincents from their personal obligation to pay plaintiff's mortgage did not give appellant any right to claim that its security in that respect has been diminished. In other words, had such release not been given, appellant to take advantage of Vincents' personal obligation would have had to pay plaintiff's mortgage. And assume the Vincents solvent, it could have reimbursed itself by recovering from them on their personal obligation; but the

Vincents on being compelled to pay would, as against appellant, be subrogated to the rights of plaintiff in the premises. The Vincents were not appellant's mortgagors, nor had they agreed to pay its debt.

The conclusion we have reached would have appeared even more clearly justified if the record had shown what respondent's counsel in his brief assumes and the trial court, in the memorandum filed with the first findings, states, viz. that the conveyance from the Vincents to the Antlers Apartment Corporation contained a covenant that the grantee, appellant's mortgagor, assumed and agreed to pay the first and second mortgages. If such were the case, the Antlers Apartment Corporation could not have complained of the release of the grantors from their personal obligation to plaintiff in its mortgage nor urged any equity superior either to Vincents or plaintiff. The appellant, the mortgagee of the Antlers Apartment Corporation, had no better equities as against plaintiff or Vincents than its mortgagor. However we cannot decide the case upon covenants existing in a recorded instrument which are not disclosed by the findings or the settled case.

Little need be said concerning the claimed merger of plaintiff's mortgage with the title acquired by defendant National Security Investment Company because of the fact that two persons, the main officers in both, own and control by far the great majority of the stock of both corporations. However there are some stockholders in the one corporation that do not have stock in the other, nor in every case of common stockholders is the ratio of stock held the same in both, so that the two corporations may not in fact be regarded as identical or one. But even if they could be considered one and the same, there was no merger of the mortgage in the title here. Plainly there was no intention to merge, for it was to the interest of whoever was the owner of the mortgage not to have it merge with the title subsequently acquired. Horton v. Maffitt, 14 Minn. 216 (289), 100 Am. D. 222; Smith v. Lytle, 27 Minn. 184, 6 N. W. 625; Converse v. Jenson, 158 Minn. 209, 197 N. W. 490.

We may call attention to the fact that had appellant prevailed it could have obtained no more than the right to have the amount

still due on its mortgage, to-wit $1,335.64, adjudged to be first paid out of the proceeds of the sale to be decreed in this action; for by the sale under appellant's foreclosure action its mortgage was fully satisfied to the extent that the proceeds thereof, after paying the costs and expenses, were applied on the debt. American B. & L. Assn. v. Waleen, 52 Minn. 23, 53 N. W. 867; Lawton v. St. Paul P. L. Co. 56 Minn. 353, 57 N. W. 1061.

The order is affirmed.