OLUF GANDRUD AND ANOTHER v. HAROLD G. HANSEN AND OTHERS.[1]

April 18, 1941.

No. 32,710.

[1]Reported in 297 N. W. 730.

*McCoy & Hansen, Paul G. Bremer,* and *Thomas O. Kachelmacher,* for appellants.

*John I. Davis* and *F. C. Anderson,* for respondents.

JULIUS J. OLSON, JUSTICE.

This suit was brought to foreclose a mortgage upon real estate, admittedly subsequent to two prior mortgages, one for $24,000 to First Minneapolis Trust Company, another of $2,000 to an individual. Tried to the court, findings were made directing foreclosure. Defendants Thorwald Hansen and wife and Paul G. Bremer joined in a motion for amended findings or a new trial. That having been denied, they jointly appeal.

The findings may be thus summarized: Defendant Harold G. Hansen was the owner of certain unimproved lots in the business section of Benson upon which he desired to erect a store building. Prior to the execution of the $24,000 mortgage, which was to provide the amount needed to pay for the new building, Hansen negotiated leases to become effective upon completion of the structure, the rentals aggregating $350 per month.

On November 1, 1929, Harold and wife executed the $24,000 mortgage, in form a trust deed, whereby they "irrevocably" constituted the trust company "their attorney to demand, collect, receive and sue for all" rents accruing under the leases, the funds so collected to be applied by the trustee in the payment of taxes, interest on the $24,000 loan, and the remainder in reduction of their indebtedness. The trust indenture was given to secure negotiable bonds, 48 in number, each for $500, maturing serially, interest being evidenced by coupons, payable semiannually at six per cent. All sums so collected were to be for the "use and benefit" of the trust company and "of any future owner or holder of bonds thereby secured." On November 18 the trust company executed the instrument, and on the 27th it was duly recorded. Then, on December 30, Harold and wife "directed" in writing the lessees to pay

128

"all rentals" to the trust company. This they did, and until December 17, 1936, this arrangement met with literal compliance. These collections then amounted to $29,625. Disbursements had been made by the trustee in strict conformity with its trust, except that it had withheld from such application $3,662.18, because Thorwald had theretofore, on April 18, 1936, succeeded to the ownership of the mortgaged property from his brother Harold, and Thorwald insisted that the arrangement made between the trust company and Harold was invalid insofar as it authorized the application of rental money toward meeting interest and principal payments upon the original loan. At that time (December 17, 1936), Mr. Bremer became the owner of the securities by appropriate assignment. The principal then had been reduced to $14,000. But there were unpaid matured bonds amounting to $7,000. Mr. Bremer also assumed the duties formerly resting upon his assignor and stepped into its shoes as trustee.

Shortly after the execution of the $24,000 mortgage, Harold and wife executed a mortgage for $2,000 to a bank, later assigned to one Erspamer. During the pendency of this suit that mortgage was foreclosed. (Plaintiffs say in their brief that they have now redeemed from that foreclosure. That perhaps is not important.) Later, the mortgage presently involved was executed by Harold and wife to plaintiffs' assignor. It was given to secure $4,000 but represented in fact obligations of Harold amounting to about $9,000, the new arrangement representing a compromise of the larger debt, the same being reduced to $4,000 upon the strength of the validity of the provisions contained in the first mortgage respecting the gradual retirement and ultimate payment thereof in conformity with its terms.

When Mr. Bremer became the owner of the securities, he entered into a new agreement with Thorwald under the terms of which the original arrangement was so altered as to make applicable to his security only the right to retain from the collections made an amount sufficient to meet taxes, insurance, maintenance, and up-

keep. Accordingly, Mr. Bremer turned over to Thorwald $7,824.48 of the collected rentals. Bremer received, up to the time of trial, $15,887.18. Out of this he had paid taxes, insurance, and repairs aggregating $8,062.70, thus leaving the balance mentioned to Thorwald. It is the application of this sum that is the bone of contention.

The court determined that plaintiffs, owners of the $4,000 mortgage, had a right to the application of the rental money in accordance with the arrangement made between the mortgagors and the trust company. There is no question but that Bremer took his assignment and assumed the original duties of the trustee; also that he received from it the $3,662.18 collected by it and not applied, and that he had due notice of plaintiffs' claim that they insisted upon performance of his trust.

■ Under our statute (2 Mason Minn. St. 1927, § 9572) a mortgage of real property is not to be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without foreclosure. Our cases support the statute. Amongst these are Orr v. Bennett, 135 Minn. 443, 161 N. W. 165, 4 A. L. R. 1396; Mutual Benefit L. Ins. Co. v. Canby Inv. Co. 190 Minn. 144, 251 N. W. 129; O'Connor v. Schwan, 190 Minn. 177, 251 N. W. 180. We have consistently held that all contemporaneously made contracts inconsistent with the statute are void. Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818; Orr v. Bennett, *supra.*

■ But our cases also hold that a mortgagor may give to his mortgagee a right of possession before foreclosure by agreement subsequent to the mortgage. Ferman v. Lombard Inv. Co. 56 Minn. 166, 57 N. W. 309; Cullen v. Minnesota L. & T. Co. *supra;* Farmers Trust Co. v. Prudden, 84 Minn. 126, 86 N. W. 887; O'Connor v. Schwan, *supra;* Lemon v. Dworsky, 210 Minn. 112, 297 N. W. 329.

■ The mortgagee may purchase the mortgagor's equity or right of redemption provided there is fair consideration given and no

unconscionable advantage is taken of the necessities of the mortgagor. Such transactions are not favored by the courts and will be set aside if there is a fair showing of unconscionable advantage resulting. O'Connor v. Schwan, 190 Minn. 177, 251 N. W. 180; 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 6396, where the cases are listed under note 2.

■ Here, as we have seen, the mortgagors, almost two months after the execution of the trust deed and more than a month after it had been recorded, in writing directed the respective tenants that this "will be your authority and direction to pay to" the trust company "all rentals" accruing under the leases theretofore made with them. Not only is that established but likewise and in further support of the genuineness of their purpose there is the long-continued recognition by the parties that rentals were to be, and thereafter in fact were, so collected and applied. Not until Thorwald and Bremer came into the picture was there any thought of abrogating the old and the making of any new arrangement. Then for the first time a "new deal" was made without notice to or opportunity to be heard by the holders of the inferior mortgages. They were ignored. Since then Thorwald and Bremer have persistently claimed that they owe them no duty since "it was the right of the first mortgagee to modify it [trust deed and subsequent assignments of rents], and such modification gave rise to no cause of action in favor of any stranger." Their insistence upon a new deal is what led to the resignation of the original trustee and the substitution of Mr. Bremer. So the problem presented is whether, under the facts recited, the new arrangement is immune to plaintiffs' attack. That by reason thereof and by defendants' conduct thereafter there will result an impairment of plaintiffs' security is clear since Bremer has suffered interest to accumulate upon his assigned debt ever since October 1, 1936. Both appellants join in asking that we determine Bremer's claim to be "a lien on the premises to the extent of $14,555.00, with interest thereon at the rate of six per cent per annum from the 1st day of October, 1936."

Harold's mortgages were all given to secure his own obligations. That it was his intent and purpose to meet all of them is apparent from his own oral representations to plaintiffs' assignor and his written agreements, evidenced by his trust deed and assignments of rents, complied with thereafter over a period of more than six years. There is but one conclusion to be drawn, namely, he wanted to treat all of his creditors fairly and justly to the full extent of his capacity. The mortgaged property was not his homestead. It was a business venture, which, if successful, would inure to his own advantage, not only by making his credit standing more secure among his own people but by making him in due course of time the real owner and thereafter giving him a comfortable income.

There can be no doubt that a mortgagor has a perfect right to dispose of his equity in mortgaged property when and as he pleases, whether the grantee be the mortgage holder or another, provided only that where he deals with the mortgagee there must be no taint of oppression or overreaching on the mortgagee's part and that the latter give a fair consideration for his bargain. This being so, we think it logically follows that the mortgagor may grant the lesser right, i. e., that of transferring to his mortgagee such right to possession of mortgaged premises as was here given.

"The only logical rule," said Justice Mitchell in Rogers v. Benton, 39 Minn. 39, 44, 38 N. W. 765, 768, 12 A. S. R. 613, "is that, to constitute 'a mortgagee in possession,' the mortgagee must be in possession by reason of the agreement or assent of the mortgagor or his assigns that he have the possession under the mortgage and because of it. The right to take possession under his mortgage being taken away, nothing remains but to foreclose, or else make some arrangement for his better security with the owner of the fee. Having no right to take possession under his mortgage, the mortgagee can get none, except by the agreement or assent of the one who owns that right. This, of course, need not necessarily be express. It may be implied from circumstances.

Where the mortgagor expressly abandons possession, his assent that the mortgagee might go into possession under his mortgage might well be implied, especially when he allows him to remain in possession for a considerable length of time without objection."

The mortgagee-in-possession doctrine as there stated has been consistently followed since, as the following cases show: Jones v. Rigby, 41 Minn. 530, 43 N. W. 390; Ferman v. Lombard Inv. Co. 56 Minn. 166, 57 N. W. 309; Cargill v. Thompson, 57 Minn. 534, 59 N. W. 638; Schmit v. Dixon, 189 Minn. 420, 249 N. W. 580; Seifert v. Mutual Benefit L. Ins. Co. 203 Minn. 415, 281 N. W. 770; Lemon v. Dworsky, 210 Minn. 112, 297 N. W. 329; 4 Dunnell, Minn. Dig. (2 ed.) § 6238.

■ Defendants fail to distinguish the cases where the mortgagee is in possession when the action is brought and those where the mortgagee seeks possession to obtain rents prior to the expiration of the redemption. They build their case upon the doctrine announced in Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818, and other cases of similar import. There the mortgagee sought to reach rents and income prior to expiration of redemption while the mortgagor was still in possession. Appropriately the court said (60 Minn. 10, 61 N. W. 819):

"The statute was passed to prevent him from doing this, and, *so far as his contract contravenes the policy of this statute, it cannot be enforced."* (Italics supplied.)

As we have seen, the statute (2 Mason Minn. St. 1927, § 9572) declares that a mortgage upon real estate is not a conveyance enabling the owner of the mortgage "to *recover possession"* without foreclosure. That distinction was pointed out in Anderson v. Minnesota L. & T. Co. 68 Minn. 491, 498-499, 71 N. W. 665, 819, and was again stated and reaffirmed in Lemon v. Dworsky, 210 Minn. 112, 297 N. W. 329. Briefly, that distinction may be thus stated: Since a mortgagee in possession holds the premises by virtue of the mortgagor's consent he may retain that possession until the mortgage obligation has been met; while the mortgagee

seeking by legal means to obtain possession to collect the income must rely upon statutory authority to accomplish that end.

Cases from other jurisdictions (where the real estate mortgage is treated only as a lien and in that respect is similar to our own statute) are to the same effect. Thus, in Douglass v. Thompson, Morehouse & Thompson, 35 Nev. 196, 212, 127 P. 561, 565, Ann. Cas. 1914C, 920, the court, after reviewing many cases from other jurisdictions, said:

"An executed oral agreement to deliver the possession of the mortgaged property is valid. *Such agreement*, whether made at the time of the execution of the mortgage or subsequent thereto, *is an independent agreement and no part of the mortgage.*" (Italics supplied.)

Kelso v. Norton, 65 Kan. 778, 70 P. 896, 93 A. S. R. 308; Spect v. Spect, 88 Cal. 437, 26 P. 203, 13 L. R. A. 137, 22 A. S. R. 314; and State ex rel. Allen v. Superior Court, 164 Wash. 515, 2 P. (2d) 1095, among many others, are helpful. They reach the same result as that reached by this court in the Anderson and Dworsky cases and for substantially the same reasons.

The court has found and determined, upon adequate proof, that the original trustee became and in fact was in "absolute control and management" of the property "with the consent of the mortgagors," and that its successor in title and interest likewise was "entitled to retain such possession * * * as additional security" for "said debt and interest" until "fully paid."

As to Bremer's application of the rents, the court was of the view that same should have been applied, after payment of taxes, insurance, and upkeep, upon the original indebtedness, and, not having done so, although fully informed of plaintiffs' claims and rights, that "plaintiffs herein are entitled to and must have the benefit of such payments" as a credit upon the original debt, thereby reducing it from the $14,555 and interest as claimed by Bremer and acquiesced in by Thorwald, to "$8,203.11, plus interest on said sum from December 5, 1939," the date fixed by the court

134

in its computations respecting the amounts unpaid upon all the mortgages involved in this litigation.

The only thing remaining for our consideration is whether the application of the money reaching Bremer was properly applied by the court. In this connection it is well to bear in mind that Bremer admits "receiving $3,662.18 [from the prior trustee] and also subsequent rentals," only denying "that that money should have been applied to the indebtedness and to the retirement of the bonds."

Defendants' position has been stated. They simply cannot see that they, or either of them, owed any duty to subsequent encumbrancers, labeled "strangers" as to them. In this we think they are in error. As long ago as Whittacre v. Fuller, 5 Minn. 401, 414 (508), this court said:

"As *subsequent encumbrancers* are presumed to have acquired their interests with reference to the liens existing. on the premises, of which they had notice, they *are entitled to have payments applied so as to reduce those liens, as they appear of record. Parties, by a private arrangement between themselves, cannot prejudice the rights of subsequent encumbrancers,* although as between themselves the arrangement may be binding." (Italics supplied.)

This holding was reaffirmed in Donnelly v. Butts, 137 Minn. 1, 2, 162 N. W. 674, the court saying:

"In Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818, it was said to be 'clearly a species of waste for the holder of an estate, under which he is in possession, to take and enjoy the rents and profits and neglect to pay the taxes, when it is his duty so to do for the benefit of some other right, interest or estate in the same land.' There would seem to be no good reason for making a distinction between depreciating the security by nonpayment of taxes and doing the same thing by nonpayment of interest accruing upon prior mortgages. Both detract from the security as it was when the subsequent mortgage was accepted. * * * A second mortgagee has the right to insist that the mortgagor apply the

rents and profits arising out of the property mortgaged upon those charges which, unless paid, become additional liens thereon superior to those of such second mortgagee, when it is made to appear that otherwise the latter's security will become inadequate and he would stand to lose his claim." (Citing cases.)

So, also, in Minneapolis Inv. Co. v. National Sec. Inv. Co. 178 Minn. 50, 52, 226 N. W. 189, 190, 63 A. L. R. 1516, where the court said:

"A mortgagee may resort to the security and also to the personal obligation of the mortgagor for payment of the debt. He may pursue either or both remedies. And so long as no subsequent encumbrances exist to his knowledge, he may relinquish either right or remedy and retain and enforce the other. But with knowledge of a subsequent mortgagee whose equitable right of subrogation may not be diminished, a release by the prior mortgagee of the mortgagor's personal obligation to pay the debt may subordinate the prior mortgage to the subsequent one." (Citing cases.)

That plaintiffs "will stand to lose" their claim if defendants' theory is accepted is here apparent since the court found that the value of the mortgaged property does not exceed $15,000.

Other authorities helpful on this phase are Groesbeck v. Mattison, 43 Minn. 547, 46 N. W. 135; Howard v. Burns, 73 Minn. 356, 76 N. W. 202; 41 C. J. p. 579 [§ 539] 2, and cases cited under notes.

Plaintiffs invoke the doctrine of estoppel as to appellants. There is much one could well say in its support. Cf. Purcell v. Thornton, 128 Minn. 255, 150 N. W. 899. But we think the case can, and should, be affirmed without its application.

Order affirmed.

Mr. Justice Stone took no part in the consideration or decision of this case.