MATTHEW CULLEN v. MINNESOTA LOAN AND TRUST COMPANY, Trustee, Intervenor.[1]

January 8, 1895.

Nos. 8986, 9009.

**Possession of Mortgaged Premises—Collection of Rents.**

Where a mortgage on real estate provides that on default in the payment of interest, taxes, or insurance, the mortgagee may collect the rents accruing from the mortgaged premises and apply them in payment of the same, and after making the mortgage the grantee of the mortgagor leased the premises, *held,* the tenant stands on the same footing as the mortgagor, and the mortgagee cannot acquire the benefits or fruits of the possession by collecting the rent due from such tenant to pay the mortgage debt, but that the same contravenes the statute which provides that a mortgage shall not enable the mortgagee to take possession without a foreclosure.

**Same—Payment of Taxes and Insurance.**

But, *held,* such rents may be so collected for the purpose of preserving the mortgaged property by paying the taxes and insurance.

**Same—After Conveyance of a Part.**

Where a part of the mortgaged property was thus conveyed to said grantee, *held,* the mortgagee cannot be compelled to exhaust its mortgage on the property not conveyed, before it can collect such rents accruing from the property so conveyed, to pay the taxes and insurance due on the property not conveyed; but it can be compelled to exhaust the rents on

[1] Reported in 61 N. W. 818.

the property not conveyed, to pay the taxes and insurance on that property, before resorting to the rents accruing on the property conveyed to pay the same.

Two actions for rent in the district court for Ramsey county brought by Cullen against Foot and others. The facts are stated in the opinion. In the first action the defendants paid into court the amount claimed in the complaint, and the trust company, as trustee, was thereupon permitted to intervene as claimant. This action was tried before Kelly, J., without a jury, and judgment was entered in favor of the plaintiff and against the intervenor. In the second action the same company intervened, and both plaintiff and defendants answered its complaint in intervention. A motion of the plaintiff for judgment upon the pleadings against the defendants, and also against the intervenor, was granted by the same judge, and judgment was entered accordingly. From both judgments the intervenor appealed. Reversed.

*W. J. Hahn, J. M. Martin* and *Chas. N. Bell,* for appellant.

The power of attorney given by Ryan was intended to place the income in the hands of the trustee to discharge any fixed charges remaining in default for 60 days. See American L. & T. Co. v. Billings, 58 Minn. 187, 59 N. W. 998. It is competent for the parties to provide for payment of rents and profits to the mortgagee while the mortgagor remains in possession. Freedman's Saving Co. v. Shepherd, 127 U. S. 502; Edwards v. Woodbury, 3 Fed. 14; Galveston R. R. v. Cowdrey, 11 Wall. 483. Cullen, having actual notice, cannot repudiate Ryan's agreement. Childs v. Clark, 3 Barb. Ch. 58. The cases cited by respondent are all cases of railroad mortgages, and are distinguishable on the ground that railroads require operation to produce income; and of necessity it has been held that in such cases the party operating is entitled to the income notwithstanding that it has been pledged.

*C. D. & Thos. D. O'Brien,* for respondent.

The trust deed was notice to respondent only of an incumbrance for which the two lots in question might be charged in their proportion in a foreclosure proceeding, after appellant had exhausted all other securities. Johnson v. Williams, 4 Minn. 183 (260). The power of attorney was not entitled to record, and was not notice. Even as

between the parties the trustee had no right to the rents, but could merely claim them under the mortgage. Spencer v. Levering, 8 Minn. 410 (461). The owner of the fee is entitled to possession and to the rents and profits even after sale up to expiration of the equity of redemption. Pioneer Savings Co. v. Farnham, 50 Minn. 315; U. S. Trust Co. v. Wabash Ry., 150 U. S. 287; Rice v. St. Paul & P. R. Co., 24 Minn. 464; De Graff v. Thompson, 24 Minn. 452.

CANTY, J. On December 1, 1887, Dennis Ryan was the owner of the 10 city lots on which the Ryan Hotel in St. Paul is situate, and also of two other lots, known as "Lots 11 and 12 in Block 28," which are a separate tract some distance from the hotel property. On that day he made and signed 350 bonds for $1,000 each, and, to secure the payment of the same, then made a trust deed or mortgage of all of said property to the intervenor trust company, as trustee. By the terms of this mortgage Ryan also agreed to keep the buildings on the premises insured, and to pay all taxes and assessments on the property when they shall come due and payable, and further agreed to give the intervenor, as trustee, a power of attorney of the same date as the mortgage authorizing it, "in case of default for 60 days in any of the conditions of this mortgage, to demand, receive, and receipt for at any time, and as often as such default shall occur, any rents due or to become due from any tenant of said premises, or any part of the same," and apply the same in payment of such sum as was or may then be due under the terms of such bonds and mortgage. Such power of attorney was then duly made to the trust company, and it and the mortgage were duly recorded on December 31, 1887; and thereupon Ryan duly issued, sold, and negotiated all of said bonds for the full amount thereof to divers persons, and all of the same are still outstanding and unpaid. On August 22, 1889, Ryan conveyed said lots 11 and 12 to the plaintiff, who, on May 15, 1890, rented the same to the defendants Foot, Schultz & Co., for the term of five years from that date, at a rental of $5,500 for the first year and $5,750 for each of the remaining four years, payable in monthly instalments in advance. On October 16, 1893, the trust company demanded of Foot, Schultz & Co. the rent thereafter to become due under their said lease, and thereupon they refused to pay the rent

to either plaintiff or the trust company; and plaintiff in the following December brought the first action against Foot, Schultz & Co. for two months' rent, and they caused the trust company to be substituted as defendant, and paid the rent due into court. The plaintiff brought the second action against Foot, Schultz & Co. for subsequent rent, and the trust company intervened. Both actions were decided against the trust company and in favor of plaintiff,—the first after a trial, and the second on the pleadings,—and it appeals to this court from the judgments entered thereon. Both appeals involve the same question and were argued together.

It appears from the findings that on October 16, 1893, when such demand was made, there was a default in the payment of taxes and assessments on the hotel property, and of interest on the bonds, and such default has ever since continued, and, at the time the trust company answered in the first action, there was delinquent and unpaid over $40,000 of such taxes and assessments on such hotel property; that the trust company was then collecting the rents of that property, but there was not sufficient of the same to pay the taxes and insurance on that property, and the interest on the bonds. There has never been any default in the payment of the taxes or assessments on said lots 11 and 12. We are of the opinion that this power of attorney should be considered, for all purposes, as a part of the mortgage, and of the same force and effect as if inserted in it. But we are of the opinion that, under the statute of this state, the power of attorney cannot be given the effect of pledging the rents in question for the payment of either the interest or principal of these bonds. G. S. 1894, § 5861, provides: "A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure." It is well settled that the effect of this short section is to change the nature of a mortgage, so that it is but a mere lien and not a conveyance of the legal title. Yet this change is rather implied than express; but the change as to the right of possession is not implied,—it is express. The statute does not expressly say that a mortgage shall not be deemed a conveyance so as to pass the legal title, but it does expressly say that it shall not be deemed a conveyance, so as to entitle the mortgagee to possession without a foreclosure;

and G. S. 1894, §§ 6072, 6118, provide at what stage in the foreclosure possession may be taken from the mortgagor and those holding under him. Unquestionably it was always competent for the debtor, by the use of apt words in his contract, to create a mere lien on his land to secure the payment of the debt, without conveying the legal title to the creditor or giving him the right to possession; but, before the passage of this statute, he could by the use of other apt words, having that meaning, convey the legal title and give the creditor the right to possession before foreclosure, as security for his debt. The statute was passed to prevent him from doing this, and, so far as his contract contravenes the policy of this statute, it cannot be enforced. See Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 425; Seckler v. Delfs, 25 Kan. 162. See also Donnelly v. Simonton, 7 Minn. 110 (167); Adams v. Corriston, 7 Minn. 365 (456); Berthold v. Holman, 12 Minn. 221 (335); Berthold v. Fox, 13 Minn. 462 (501). But, at a time wholly subsequent to the making of the mortgage, the mortgagee may take possession, with the consent of the mortgagor, without violating the policy of the statute. Fee v. Swingly, 6 Mont. 596, 13 Pac. 375.

Where, subsequent to the mortgage, the mortgagor or his grantee makes a lease of the mortgaged premises, the tenant stands on the same footing as the mortgagor; and the mortgagee cannot, under a provision in the mortgage, acquire the benefits or fruits of the possession by collecting the rent due from such tenant. Although a mortgage at common law vested both the legal title and right to possession in the mortgagee, still he could not recover rent from a tenant of the mortgagor, whose tenancy commenced after the making of the mortgage; but such tenant stood on the same footing as the mortgagor, and his only remedy against such tenant was ejectment. Evans v. Elliot, 9 A. & E. 342; Rogers v. Humphreys, 4 A. & E. 299; Price v. Smith, 2 N. J. Eq. 516; Sanderson v. Price, 21 N. J. Law, 637; McKircher v. Hawley, 16 Johns. 289; Mayo v. Fletcher, 14 Pick. 533.

Whether it is competent under our statute thus to pledge the rents where the lease is prior to the mortgage, it is not necessary here to consider. In such a case the mortgagee of a common-law mortgage could recover of the tenant at least the rent accruing after demand. Moss v. Gallimore, 1 Doug. 279; Rawson v. Eicke, 7 A.

& E. 451; Burrowes v. Gradin, 1 Dow. & L. 213; Price v. Smith, supra. But, by the terms of the mortgage and power of attorney the rents in question are pledged, not only for the payment of the interest and principal of the bonds, but also for the payment of the insurance on the buildings and taxes on the premises. It seems to us that neither the letter nor spirit of the statute prohibits the pledging of these rents for the preservation of the property, and that the agreement applying these rents to the payment of the taxes and insurance should be enforced. It is clearly a species of waste for the holder of an estate, under which he is in possession, to take and enjoy the rents and profits and neglect to pay the taxes, when it is his duty to do so for the benefit of some other right, interest, or estate in the same land. Cairns v. Chabert, 3 Edw. Ch. 312; 1 Washb. R. P. (5th Ed.) 135. The enforcement of such an agreement to apply such rents in payment of the mortgage debt would be either a partial foreclosure, or an evasion of the law requiring a foreclosure. But the enforcement of an agreement to apply such rents in payment of the taxes and insurance is not at all in the nature of a foreclosure. It is not oppressive to the debtor, and the same technical objections to its enforcement do not apply. There are strong equities in favor of its enforcement. Taking possession under a common-law mortgage or bringing ejectment for that purpose was a process of foreclosure, or at least a step in that process, and there was good reason why the mortgagee should not be allowed to recover such rents, and thus foreclose his mortgage by piecemeal; but that reason does not apply to the enforcement of an agreement to apply the rents in payment of the taxes and insurance, and there is no reason why that agreement cannot be enforced, at least in equity, without taking possession. Neither is the enforcement of such an agreement a step in the direction of foreclosure, or something which should only be done pending foreclosure, as would be the case if such rents were to be applied in part payment of the mortgage debt.

The trust company cannot be compelled to exhaust its mortgage on the hotel property by foreclosure, before it is entitled to recover the rents in question, as contended by plaintiff. But the trust company can be compelled to apply in payment of the insurance and taxes due on the hotel property all the rents heretofore

collected by it from that property, and all the rents which it can by reasonable diligence collect from that property after plaintiff asserts his right to have all these rents so applied, and it must so apply all of the same, before resorting to the rents accruing from plaintiff's property, to pay the insurance and taxes on the hotel property. But plaintiff must not only assert this right, but also make it appear that the rents so collected on the hotel property are sufficient to pay the taxes and insurance thereon. He has not made it so to appear.

The judgments appealed from are reversed, with direction to the court below to grant a new trial in the action tried, or order judgment for the trust company on the findings of fact, as to that court seems meet and proper.