## MILDRED W. LARSON v. D. J. ORFIELD.[1]

April 27, 1923.

No. 23,332.

**Receiver of rents of apartment building after foreclosure sale because of waste.**

1. The owner, under usual circumstances, is entitled to possession of mortgaged property until the expiration of the period of redemption after the foreclosure sale. If necessary to prevent waste resulting in such an impairment of the property as to render it inadequate security a receiver of accruing rents may be appointed. A failure to pay taxes and insurance, and interest on a prior mortgage, and permitting the property, an apartment building valuable only as it produces rents, to be neglected and become in disrepair so as to deteriorate in value and result in the loss of tenants, constitute waste. The appointment of a receiver is a harsh measure and the power of appointment, under our theory of a mortgage, is exercised cautiously.

**Appointment of receiver sustained.**

2. Within the rules stated and the facts shown the trial court was justified in appointing a receiver.

Action in the district court for St. Louis county to foreclose a mortgage upon certain premises and for the appointment of a receiver of rents and profits. From an order, Fesler, J., appointing a receiver, D. J. Orfield appealed. Affirmed.

[1]Reported in 193 N. W. 453.

*M. N. Orfield,* for appellant.

*Fryberger, Fulton, Hoshour & Ziesmer* and *John Swinland,* for respondent.

DIBELL, J.

The defendant D. J. Orfield appeals from an order of the district court of St. Louis county, made September 23, 1922, appointing a receiver in a foreclosure action.

1. During foreclosure and until title has passed by the expiration of the period of redemption the landowner, under usual circumstances, is entitled to the possession of the mortgaged land. This is the necessary effect of the statute. G. S. 1913, § 8077. A receiver in foreclosure may be appointed on recognized equitable grounds. The proceeding which results in taking the possession from the owner is harsh and if not strictly limited in its application is at war with our theory of a mortgage. A receiver cannot be appointed to pay the mortgage under foreclosure or interest upon it. Marshall & Ilsley Bank v. Cady, 76 Minn. 112, 78 N. W. 978; Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 61 N. W. 818. But equity regards the commission of waste, if so substantial as to impair and render inadequate the security, as a ground for the appointment of a receiver of rents accruing; and the failure to pay taxes, or insurance, or overdue interest on a prior mortgage, and permitting the mortgaged property, an apartment building, to be neglected and become in disrepair so as to deteriorate in value and result in the loss of tenants, constitute waste. Donnelly v. Butts, 137 Minn. 1, 162 N. W. 674; Justus v. Fagerstrom, 141 Minn. 323, 170 N. W. 201; Justus v. Fagerstrom, 145 Minn. 189, 176 N. W. 645; Nielsen v. Heald, 151 Minn. 181, 186 N. W. 299, where the cases are discussed.

2. With these principles for our guidance we come directly to the facts of the case.

On August 16, 1921, the defendant Florin gave to one Donald a purchase money mortgage for $17,000 on an apartment building in Duluth known as Park Terrace. This mortgage was assigned to the plaintiff. There was a prior mortgage of $16,000 which became

due on May 8, 1922. The defendant Orfield acquired title on June 1, 1922.

On August 7, 1922, foreclosure was commenced and application was made for a receiver, and a temporary restraining order against the collection of rents was issued. There was then $480 overdue interest on the first mortgage. There were taxes of $600, to which the penalty attached on June 1, 1922, and there was unpaid insurance amounting to $120. After a hearing on August 26, 1922, there was an adjournment to November 4, 1922, and the temporary restraining order against the collection of rents was discharged. It is gathered from the record that the continuance was had that the defendant might relieve the property of some of the charges upon it, and remedy the apparent bad condition of the building. On September 15, 1922, another application for a receiver was made. On September 23, 1922, a receiver was appointed.

The court found that the defendant had collected rents at the rate of $433 per month, that he had committed waste in failing to pay the interest on the first mortgage, in failing to pay the taxes, in failing to pay insurance premiums, in failing to furnish janitor service and necessary heat, and in failing to keep the property in proper tenantable condition; and that the plaintiff's mortgage security was being impaired. These findings are sustained. The trial court might well conclude that after the August hearing there was no earnestly directed effort toward the payment of taxes or insurance or interest on the first mortgage, or toward the improvement of the condition of the property. The court found that the property was worth not to exceed $45,000. On this basis of valuation the ground was of the value of $1,600. The two mortgages with accrued interest, and taxes and insurance, amounted to more than $35,000. By the time the period of redemption has run the interest and taxes will have increased the encumbrance several thousands.

The building was constructed more than 30 years ago. One of the affidavits, as it appears in the printed record, says 20 years; but the original affidavit among the files has it 30 years. There is an evident mistake in printing. It appears from the affidavit of the plain-

titff's husband that about the first of July, 1922, the defendant, when the first mortgage was in default, and when there were unpaid taxes and insurance, proposed to pay the plaintiff's mortgage in whole or in part by an assignment of a second mortgage on lands in one of the Dakotas; and that when his offer was refused he stated that he would not discharge the encumbrances upon the property, nor pay the interest, taxes or insurance, nor give any care to the property. This affidavit does not appear in the printed record, but is among the original files. We do not find its substance denied.

There is evidence that the defendant Florin is insolvent, and that she is the only person liable for the mortgage debt, except Donald, the mortgagee. This evidence appears in the affidavit of the plaintiff among the original files. It is not printed in the paper book. The defendant says that Florin is solvent and that one Audette, who it is alleged bought from Florin, is solvent. The affidavit of the plaintiff is upon information and belief, as is that of the defendant. The court finds that all persons liable upon the mortgage are either insolvent or are nonresidents. The finding of insolvency, though based on unsatisfactory evidence, is sustained. It does not appear that the defendant Orfield assumed the mortgage. Donald is the one referred to as a nonresident. As between the defendant and Donald the property is the primary security. His solvency and residence seem unimportant. The plaintiff is in no worse position than Donald would be were he foreclosing, and the defendant is in no better.

It is clear that the character as well as the location of the building for profitable renting is unfortunate. A building of like character would not now be built. It is old. It is subject to rapid deterioration if neglected. A loss of tenants, natural to come from the condition of the building in August and September, 1922, would greatly depreciate its value. The annual rental is something like $5,000. The cost of upkeep, which includes heat, is large. The property is not much of a revenue producer on the basis of $35,000 or $45,000. The finding is undisputed as to the receipt of rents and the failure to pay taxes and insurance and overdue interest on the first mort-

gage. The court was well justified in concluding that the defendant had no set purpose to use accruing rents in preventing waste, and that the property in his hands would not receive the care essential to prevent a condition of dilapidation and a consequent great depreciation in value. The security was properly enough found inadequate. One does not gather from the evidence that a $35,000 mortgage upon it could be negotiated or that with a first mortgage of $16,000 anything like an equal amount could be raised by a second mortgage. There is a mortgage and perhaps attachment and mechanics' liens subsequent to the two mortgages. They are unimportant except as they indicate the involved and encumbered condition of the property. Altogether the evidence suggests that the defendant's equity is a sort of trading proposition inviting the collection of rents and the neglect of the property.

What we say is necessarily limited to the situation when the receiver was appointed. We have nothing to do with the application of the proceeds of the receivership or the effect of a sale on foreclosure.

Order affirmed.