# JOHN L. SMITH v. AMBASSADOR HOLDING COMPANY. AND OTHERS.[1]

October 8, 1926.

No. 25,488.

**Appointment of receiver to collect rents pending foreclosure not justified by evidence.**

Evidence considered and *held* not sufficient to justify the appointment of a receiver under the circumstances.

Mortgages, 27 Cyc. p. 1624 n. 95; p. 1625 n. 2.

Defendants appealed from an order of the district court for Hennepin county, Salmon, J., appointing a receiver of the Windsor Apartments in Minneapolis. Reversed.

*Cobb, Wheelwright, Hoke & Benson* and *Claude G. Krause,* for appellants.

*Leonard, Street & Deinard,* for respondent.

QUINN, J.

This is an appeal from an order of the district court of Hennepin county appointing a receiver to collect rents of the Windsor Apartments pending foreclosure proceedings of a second mortgage.

A brief history of the case is as follows: On October 6, 1922, the Ambassador Holding Company owned lot 1 situated at the corner of Franklin and Third avenues south, in the city of Minneapolis. On that day it executed to the defendants, Federal Bond & Mortgage Company, Incorporated, as trustee, and Nathan M. Gross as co-trustee, a trust deed to secure a building loan of $400,000, the amount thereof to be evidenced by bonds to be sold to divers investors. This deed was recorded on October 11, 1922. Thereafter, the erection of an apartment building, containing 98 apartments and some stores, was commenced on the lot, which building was partially paid for out of the proceeds of such loan. The building

[1]Reported in 210 N. W. 288.

was completed in December, 1923. Lien claims, to the amount of approximately $150,000, were filed against the premises.

On May 1, 1923, the Holding company executed to John L. Smith, as trustee, a deed to secure a second bond issue of $100,000 on the premises, which deed was recorded on May 24, 1923.

Two actions were commenced to foreclose such mechanics' liens and on August 25, 1923, the Holding company conveyed the title to said property to Charles B. Elliott. The Reeves Coal Company held a money judgment against the Holding company upon which execution had been issued and returned unsatisfied. That company commenced an action on behalf of itself and other unsecured creditors asking that the conveyance to Elliott be set aside as fraudulent and for a temporary receiver. On November 19th Walter A. Eggleston was appointed temporary receiver, duly qualified and operated the premises until discharged by order of the court. In September, 1924, Elliott filed a petition setting forth that the claims of all unsecured creditors had been fully adjusted and released, and asked for a dismissal of the action and for the discharge of the receiver. Upon hearing the petition was granted and on December 10, 1924, the receiver was discharged. The order provided for the discharge of the receiver, directed him to pay the sum of $1,400 to his counsel, $2,000 to himself, and the balance ($2,423.26) in his possession, derived from the premises, to Elliott. By a deed dated September 18, 1924, and recorded October 29, 1924, Elliott conveyed the property to Lester J. Felsenthal who, on December 31, 1925, conveyed the same to the defendant Windsor Holding Company, which was organized for the purpose of receiving title to the property.

The lien foreclosure actions were tried together and the trial thereof completed in November, 1924. The trustees under the first trust deed interposed a cross bill in that suit asking for the foreclosure of their trust deed or mortgage. On November 25, 1925, the trial court filed its findings and conclusions sustaining the priority of the first mortgage as asked for in the cross bill, disallowing certain lien claims and allowing others subordinate to such

mortgage and holding the second trust deed or mortgage to be subordinate to both the first mortgage and the liens. The total amount of the first mortgage and of the liens as allowed by the court as of the date of the filing of its decision, was as follows: To the co-trustees on account of first mortgage bondholders, $493,000; amount of valid mechanics' liens, including interest, $102,000.

The order further provided for the sale of said premises and that the proceeds thereof be applied, first, to the payment of all costs and disbursements, then, to the payment of the amounts owing to the defendant trustees on account of the first mortgage and the surplus, if any there be, to the satisfaction of the mechanics' liens and then to the plaintiff on account of the second mortgage lien.

The present action was commenced in December, 1925, to procure the appointment of a receiver to take possession of the premises and collect the rents. The basis therefor, as set forth in the complaint, was waste, that is, that the owners of the premises were collecting the rentals and not applying the same or any portion thereof to the payment of the principal or interest due upon the first mortgage or deed, the payment of the mechanics' liens or of the bonds of the second mortgage issue; that the premises were grossly inadequate for the payment of all of said encumbrances; that the rents were being retained by the owners of the premises; that the taxes were allowed to become delinquent; and that the owners did not intend to apply any of the rents collected by them to the payment of such encumbrances, but intended to keep them for their own use and benefit until the time for redemption from such first mortgage sale expired.

It is not contended that there was any physical waste, deterioration or mismanagement of the property, or that a receiver could increase the rentals of the premises, or that the percentage of vacancies is different than in other similar apartment buildings in the city of Minneapolis, nor is there any showing that there has ever been sufficient rentals to cover the overhead expenses and maintenance of the premises and prevent any of such defaults. Much stress is laid upon the failure to pay interest on the first

mortgage but this of itself is not waste as to the second mortgage, unless it appears that the property produces sufficient income with which to pay the same. There is a total failure to show that there was at any time available rentals for such purpose. Nielson v. Heald, 151 Minn. 181, 186 N. W. 299, 26 A. L. R. 29; Marshall & I. Bank v. Cady, 76 Minn. 112, 78 N. W. 978.

We find nowhere in the record any proof of sufficient net income to remove any of the defaults or with which to pay the taxes. Such showing must be clear and convincing. The owner did not pay the 1924 taxes but the defendant trustees did. Plaintiff urges strongly that the failure of the Windsor Holding Company, which holds title to the property, to pay the taxes, of itself constitutes such waste as to justify the appointment of a receiver and cites Cullen v. Minn. L. & T. Co. 60 Minn. 6, 61 N. W. 818, in support of such contention but in that case it is specifically held that "plaintiff must not only assert this right, but also make it appear that the rents so collected on the hotel property are sufficient to pay the taxes and insurance thereon. He has not made it so to appear."

We are of the opinion and hold that the failure of the owner to pay taxes does not of itself constitute waste, and that, under the circumstances of this case and the showing made, there was no necessity for the appointment of a receiver, and that the appointment should not stand.

Reversed.