# JAMES E. GARDNER v. W. M. PRINDLE & COMPANY.[1]

January 8, 1932.

No. 28,570.

[1]Reported in 240 N. W. 351.

*George H. Spear* and *James E. Gardner,* for appellant.
*Alford & Hunt,* for respondent.

STONE, J.

From a judgment for defendant ordered on the pleadings plaintiff appeals.

In 1925 Zachary T. Mullin (since deceased and of whose estate plaintiff is now administrator de bonis non) to secure a $35,000 loan, mortgaged to defendant certain Duluth real estate, the mortgage being in the form of a trust deed. It contained an assignment to the mortgagee of the rents and profits to pay taxes, assessments, and insurance premiums in the payment of which the mortgagor might default. By apt words it was attempted to make that assignment available to the mortgagee after foreclosure and during the year for redemption, in the event that the sale was to the mortgagee itself. The mortgage has been foreclosed and the property bid in by defendant, mortgagee, for the amount of the whole debt, plus an additional sum for insurance premiums paid by the mortgagee.

After the sale, November 10, 1930, defendant, claiming the right under the mortgage to collect enough rents to pay the 1929 taxes, delinquent after June 1, 1930, and the cost of repair necessary to keep the premises tenantable, was about to sue the lessees. Plaintiff thereupon commenced this action to restrain defendant from collecting any rents during the year allowed for redemption. The question is whether defendant lawfully could claim such rents, not to reduce the mortgage debt, which was paid by the foreclosure sale, but only to pay taxes and the cost of repair necessary to keep the property tenantable. The decision below, for defendant, was that the mortgage gave defendant mortgagee that right. The mortgagor's estate is insolvent, but there is no suggestion that the security is inadequate.

On both sides, the argument is much concerned with G. S. 1923 (2 Mason, 1927) § 9572, providing that "a mortgage of real

property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the .real property without a foreclosure." We had supposed both that the purpose of that statute had been determined and its effect as limited by the purpose defined by our decisions. We review them briefly.

At common law a mortgage vested legal title in the mortgagee with the right to take possession before foreclosure. As was said in Cullen v. Minnesota L. & T. Co. 60 Minn. 6, 10, 61 N. W. 818, 819: "The statute was passed to prevent him from doing this, and, so far as his contract contravenes the policy of this statute, it cannot be enforced." So, as there held [60 Minn. 11], any attempt in the mortgage itself to assign rents for application upon the mortgage debt would be "an evasion of the law requiring a foreclosure" in order to get the possession, and so without effect. Pressed to its logical conclusion, the rule that rents are severable from the reversion, and so freely assignable, even by mortgagor to mortgagee, would enable the latter to secure to himself in many cases the equivalent of the complete right of possession without foreclosure, and so defeat the statute. That we cannot allow.

But the statute is in derogation of long established rules of common law, and so not to be carried beyond the plain limits fixed by its manifest purpose. That was only "to abrogate the common law doctrine that a mortgage created an estate upon condition in the mortgagee, which, upon default in the performance of the condition, became absolute, entitling the mortgagee to recover possession." Hence the mortgagee still has the right to have the value of his security protected from impairment by the mortgagor's violation either of the covenants of the mortgage or the equities of the mortgagee. No statute has deprived him of that, and equity will protect it. Lowell v. Doe, 44 Minn. 144, 147, 46 N. W. 297; Marshall & Ilsley Bank v. Cady, 76 Minn. 112, 78 N. W. 978; National F. Ins. Co. v. Broadbent, 77 Minn. 175, 79 N. W. 676; Donnelly v. Butts, 137 Minn. 1, 162 N. W. 674; Nielsen v. Heald, 151 Minn. 181, 186 N. W. 299, annotated 26 A. L. R. 29 (33) ; Larson v. Orfield, 155 Minn. 282, 193 N. W. 453. See also Justus v. Fager-

strom, 145 Minn. 189, 176 N. W. 645; Holt State Bank v. Hamernes, 171 Minn. 350, 214 N. W. 52; Grady v. First State Sec. Co. 179 Minn. 571, 229 N. W. 874. The effect of such cases has been thus stated:

"The right to have a receiver appointed under these circumstances [merely to preserve the security], being purely equitable in character, is generally regarded as unaffected by the statutes in question." Case note, 7 L.R.A.(N.S.) 1001 (1004). For additional authorities see annotations in 4 A. L. R. 1405 and 26 A. L. R. 33.

At this point there has come a divergence in judicial opinion as to the effect of the statute upon the power of equity to protect the mortgagee. 3 Jones, Mortgages (8 ed.) § 1936; Moncrieff v. Hare, 38 Colo. 221, 87 P. 1082, annotated 7 L.R.A.(N.S.) 1001. In California, for example, it was held that the practice of appointing a receiver to collect rents pending foreclosure was abrogated. Guy v. Ide, 6 Cal. 99, 65 Am. D. 490 (compare Bank of Woodland v. Stephens, 144 Cal. 659, 79 P. 379). That view was dissented from in Hyman v. Kelly, 1 Nev. 179, the theory being that, the legislature having forbidden to the mortgagee the remedy of ejectment against a mortgagor in default, there was all the more reason for a liberal exercise of the chancellor's power to intervene for the protection of the security.

Our rule, established in the Cullen case, 60 Minn. 6, 61 N. W. 818, often followed since and but lately confirmed in Fidelity-Philadelphia Tr. Co. v. West, 178 Minn. 150, 226 N. W. 406, is that, while an assignment of rents in the mortgage itself cannot be resorted to by the mortgagee for the purpose of paying or reducing the debt, it will be given effect, in a proper case, to preserve the value of the security. The result is protection for the mortgagor's statutory right of possession until and pending foreclosure, but without undue or unnecessary impairment of the mortgagee's right to enforce the mortgagor's incidental covenants and his duty otherwise to protect the security.

■ This foreclosure was by advertisement under the statute. G. S. 1923, §§ 9602–9633, inclusive, as amended, 2 Mason, 1927, id.

The effect was to discharge the mortgage, even as security for the debt. Upon foreclosure a mortgage becomes functus officio. Thereafter, if there is no redemption, it remains a mere muniment of title. To the extent of the bid at the sale, the debt ceases to exist. After foreclosure the rights of the parties are measured, not by anything in the mortgage, except as it is a muniment of title, but by the statute. "These rights are absolute, and the parties cannot be deprived of them." Pioneer S. & L. Co. v. Farnham, 50 Minn. 315, 318, 52 N. W. 897. If the mortgagee is the purchaser, he has in lieu of his former mortgage lien one under the statute "for the amount of the purchase price, which was applied in payment of his debt." Carlson v. Presbyterian Board of Relief, 67 Minn. 436, 439, 70 N. W. 3, 4. The character of that lien and its limitations are determined by the statute and not by the mortgage. "The remedy on the mortgage as a security is exhausted by a foreclosure." Winne v. Lahart, 155 Minn. 307, 310, 193 N. W. 587, 589, 34 A. L. R. 844.

It follows that, whatever right the mortgagee has under the mortgage to collect rents, it is terminated by the foreclosure sale. Moreover, in this case, defendant purchased subject to the very taxes to pay which it now wants rents. That is, it is trying "to get the property for that much less than its bid at the foreclosure." That is not permissible under the rule of Marshall & Ilsley Bank v. Cady, 76 Minn. 112, 115, 78 N. W. 978. See also Holt State Bank v. Hamernes, 171 Minn. 350, 214 N. W. 52; Grady v. First State Sec. Co. 179 Minn. 571, 229 N. W. 874.

■ The answer as it stands shows no waste through failure to make necessary repairs or otherwise. But does demand, and the judgment awards to defendant, enough rents to pay the taxes in question, "and to enable it to make all necessary repairs to keep said premises in tenantable condition." The judgment presents, there has been argued, and we answer the question whether defendant may claim enough of the rents accruing during the year of redemption to make the repairs necessary to keep the property tenantable. Its rights under the mortgage having been terminated by the sale, its demand is to be justified, if at all, not by anything

in the mortgage, but by its rights as purchaser. Its status is the same as would be that of a third party purchaser.

Where the only or principal value of the property depends upon the rents, it is waste to let it become untenantable. The property now involved seems to be of that character. If not kept reasonably attractive to tenants, preventable vacancy surely results to the damage of all concerned. Vacancy resulting from disrepair causes, in addition to immediate diminution in rent, a damage to the character and reputation of an apartment building which may be much more serious. It is waste to permit it "to be neglected and become in disrepair so as to deteriorate in value and result in the loss of tenants." Larson v. Orfield, 155 Minn. 282, 283, 193 N. W. 453, 454. Our rule is that waste by a mortgagor in possession will not be enjoined unless it "may so impair the value of the property as to render it insufficient, or of doubtful sufficiency, as security for the debt." Moriarty v. Ashworth, 43 Minn. 1, 44 N. W. 531, 19 A. S. R. 203; 4 Dunnell, Minn. Dig. (2 ed. & Supp.) § 6231. That is said to be the general rule. 2 Jones, Mortgages (8 ed.) § 846. Whether this case is within it must be determined below.

The judgment is reversed.

OLSEN, J. (concurring specially).

I concur in the first two subdivisions of the opinion and in the conclusion that the judgment should be reversed, but am unable to agree with what is said in the third subdivision of the opinion or in the conclusion that the case should go back for trial of the question as to repairs.

The first two subdivisions demonstrate very clearly that defendant has no right to collect rents from the property for the purpose of paying or repaying to itself, if it has already paid them, delinquent taxes which were liens upon the property at the time it purchased at the mortgage sale or for insurance premiums paid by it prior to the sale.

But these delinquent taxes and this insurance premium are the only claims set forth in defendant's counterclaim or cross-complaint as grounds for any affirmative relief. There is no allegation

of any failure to keep the building in repair or any disrepair thereof, or any damage or waste in reference thereto. Hence, when we have determined that defendant is not entitled to any relief on account of taxes or insurance premium, defendant's entire claim for affirmative relief fails, and the judgment in its favor entitling it to collect rents must be reversed.

That the trial court granted judgment on the sole ground of these delinquent taxes and failure to pay insurance premium is clearly shown by its memorandum, wherein the judge says:

"It also appears that the mortgagor's estate is insolvent but not that the security is inadequate, nor that there is any physical waste or deterioration or any waste whatever except such as arises out of nonpayment of taxes for the years 1929 and 1930 and nonpayment by plaintiff of insurance premiums."

It follows that the case should not be sent back for trial of the question of what, if any, repairs are necessary, as held in the third subdivision of the opinion.

Defendant's case having failed, the plaintiff may be entitled to have determined the question of whether he is entitled to an injunction restraining the defendant from interfering with his tenants. If there remains anything to try on the present pleadings, that would seem the only remaining question.