CROSS COMPANIES, INCORPORATED v.
CITIZENS MORTGAGE INVESTMENT TRUST.

232 N. W. 2d 114.

August 8, 1975—No. 45072.

*Maslon, Kaplan, Edelman, Borman, Brand & McNulty* and *Robert A. Engelke,* for appellant.

*Carlsen, Greiner & Law, Peter F. Greiner,* and *John E. Rode,* for respondent.

Heard before Todd, MacLaughlin, Yetka, Scott, and Knutson, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

This is an appeal from an order of the municipal court of the city of St. Paul granting plaintiff-respondent, Cross Companies, Incorporated (Cross), a writ of restitution in a forcible entry and unlawful detainer action, and from the judgment entered. Defendant-appellant, Citizens Mortgage Investment Trust (Citizens), claims the right to possession of the real estate and the right to rents and profits pursuant to a mortgage and a contemporaneous and separate assignment of rents and profits. Affirmed.

The facts presented offer no basis for dispute between the parties and therefore the following clear issues are presented:

(1) Whether the rights of the mortgagee (Citizens), under the mortgage and contemporaneous assignment of lease, to possession of the real estate and collection of rents and profits terminated upon a foreclosure sale for the full amount of the indebtedness.

(2) Whether the foreclosure sale for the full amount of the indebtedness extinguished all rights of Citizens as a "mortgagee in possession."

On January 24, 1973, Citizens made a $3,500,000 construction loan to Cross so that Cross could construct a 234-unit, 2-building apartment complex. The complex was to be located upon real estate owned in fee by Cross in St. Paul, Minnesota. A promissory note evidenced the loan and was executed on January 24, 1973. The note included provisions for interest payable until maturity and monthly payments on principal. On January 24, 1973, Cross also executed a mortgage to Citizens covering the real estate and securing payment of the indebtedness. The mortgage was duly filed and registered in the office of the Ramsey County registrar of titles on the same date.

As additional security for payment of the principal, interest, insurance premiums, taxes, and assessments, the mortgage contained a provision by which Cross sold and assigned to Citizens

all rents, profits, and income during the term of the mortgage. The instrument further provided that the assignment of rents would continue in effect during the foreclosure and redemption period as payment for any deficiency which might result from a foreclosure sale. The mortgage did not state that this provision would be effective if the foreclosure sale did not result in a deficiency.

In addition, on January 24, 1973, Cross executed a separate but contemporaneous assignment of lease which, in the event of default, would allow Citizens to collect and receive all rents payable under leases covering the mortgaged premises. It is clear that the mortgage instrument and the assignment constituted but one financial arrangement and that each instrument was an integral part of this arrangement. Further, the assignment of lease provided that upon satisfaction of the indebtedness, it would be deemed null and void. This instrument was also duly filed and registered in the office of the registrar of titles on January 25, 1973.

Cross failed to make the payments due under the note and mortgage, and Citizens notified Cross in writing that effective November 1, 1973, Citizens would exercise its rights under the assignment of lease and would commence foreclosure proceedings. Citizens then entered into possession of the premises and began collecting rents. It foreclosed by advertisement and, on December 18, 1973, purchased the mortgaged premises for $3,649,733.83, the full amount of the mortgage indebtedness plus all costs incident to the foreclosure proceeding.

Although Cross did not oppose the initial possession of the premises by Citizens on November 1, 1973, after the foreclosure sale it demanded the return of the premises during the redemption period and claimed the right to collect rents and profits. Citizens refused the demand and continued to collect rents from the premises, despite Cross' contention that the debt, mortgage, and assignment had all been extinguished by Citizens' purchase of the property for the full amount of the indebtedness.

The net rents have been placed in a separate bank account, and Cross has been denied access to them. Further, Citizens has paid real estate taxes from those rents subsequent to the foreclosure sale, even though the property was purchased for the full amount of the indebtedness.

On February 19, 1974, pursuant to Cross' complaint, a summons in forcible entry and unlawful detainer was issued in the municipal court of St. Paul, which Citizens answered on February 26, 1974. On February 22, 1974, Citizens brought an action in the Ramsey County District Court to obtain a declaratory judgment regarding the validity of the above instruments and their effect. It also filed a motion for a temporary injunction. The relief sought was an order enjoining Cross from breaching the terms of the mortgage and the assignment of rents; from commencing any action in forcible entry and unlawful detainer to, in effect, nullify the assignment of rents and intercept Citizens' right to possession and control; and from interfering with Citizens' collection of rents and profits.

On February 28, 1974, Citizens' motion for a temporary injunction was heard before the Ramsey County District Court, and on March 15, 1974, an order was issued denying the motion.

On April 8, 1974, the unlawful detainer and forcible entry action was tried before the St. Paul municipal court. On April 16, 1974, incorporating the memorandum of the district court in its findings and order, the court ordered that the writ of restitution be issued and that the premises be returned to Cross during the redemption period.

█ The main focus of this action seems to be on the correct interpretation of a 1969 amendment[1] to Minn. St. 559.17, the controlling statute in this case. Section 559.17 provides as follows:

"A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover

---

[1] L. 1969, c. 711, § 1, effective May 25, 1969.

possession of the real property without a foreclosure. *Nothing contained herein shall be construed to prevent a mortgagor from assigning, as additional security for the debt secured by the mortgage, the rents and profits from the mortgaged real property, and such an assignment shall be valid whether contained in the mortgage instrument itself or in a separate instrument.*" (Italics supplied to reflect 1969 amendment.)

Appellant would have this court declare that the remedial nature of the amendment is such as to reverse case law based upon the prior statute. Further, appellant would construe the statute as allowing an independent treatment of the assignment with the result that even though, upon foreclosure, the mortgage as security for the debt is discharged, this extinguishment has no effect upon the rent assignment.

Respondent, on the other hand, relies upon specific language contained in Paragraph 20 of the mortgage agreement, which provides in pertinent part:

"* * * In the event of a sale of foreclosure which shall result in a deficiency, this assignment shall stand as security during the redemption period for the payment of such deficiency."

as well as that contained in the assignment of lease:

"Simultaneously upon satisfaction of the indebtedness hereby collaterally secured, evidenced by recordation of a release of the hereinbefore mentioned first mortgage, then this assignment shall be deemed null and void and of no force or effect."

In a line of decisions spanning nearly 80 years regarding the effect of mortgage foreclosure proceedings upon possession during the statutory period of redemption, this court has worked the principles it has applied into a finely constructed theory. At common law, a debtor could convey legal title and the right to possession, rents, and profits from real estate to the creditor as security for a debt. Cullen v. Minnesota Loan & Trust Co. 60 Minn. 6, 61 N. W. 818 (1895). The result of a mortgage of this

nature was that upon default in the performance of a duty under the mortgage, full title became vested in the mortgagee to allow him to recover possession. Gardner v. W. M. Prindle & Co. 185 Minn. 147, 240 N. W. 351 (1932). The common law was abrogated, however, by statute. Under the predecessor to Minn. St. 559.17 the debtor could no longer convey title or give the creditor the right to possession before a foreclosure. Essentially, the court did allow an assignment of rents in a contemporaneous instrument for the limited purpose of paying taxes, insurance premiums, and assessments. An extension of this allowance has historically evolved into the rule that rents collected from the mortgaged premises could be applied to a reduction of the mortgage debt if the assignment of rents was given subsequent to the mortgage. Farmers Trust Co. v. Prudden, 84 Minn. 126, 86 N. W. 887 (1901); Seifert v. Mutual Benefit Life Ins. Co. 203 Minn. 415, 281 N. W. 770 (1938); Prudential Ins. Co. v. A. Enkema Holding Co. 196 Minn. 154, 264 N. W. 576 (1936).

It is upon this latter theory that the major distinction took root and it is upon this distinction that this court has recently based its primary decisions. Beginning with the early cases of Fredin v. Cascade Realty Co. 205 Minn. 256, 285 N. W. 615 (1939), and Grady v. First State Security Co. 179 Minn. 571, 229 N. W. 874 (1930), this court has stated that any contract by which the mortgagor attempted to grant possession to the mortgagee (including rents and profits), whether contained in the mortgage instrument or in a separate instrument contemporaneously executed, created no lien in favor of the mortgagee with regard to the rents and profits, and that the latter had no right to apply them to the mortgage debt.

In Gardner v. W. M. Prindle & Co. 185 Minn. 147, 150, 240 N. W. 351, 352 (1932), this court succinctly examined, in language that is applicable here, the consequences resulting from a mortgage foreclosure. We concluded:

"This foreclosure was by advertisement under the stat-

ute * * *. The effect was to discharge the mortgage, even as security for the debt. Upon foreclosure a mortgage becomes functus officio. Thereafter, if there is no redemption, it remains a mere muniment of title. To the extent of the bid at the sale, the debt ceases to exist. After foreclosure the rights of the parties are measured, not by anything in the mortgage, except as it is a muniment of title, but by the statute. * * * If the mortgagee is the purchaser, he has in lieu of his former mortgage lien one under the statute 'for the amount of the purchase price, which was applied in payment of his debt.' Carlson v. Presbyterian Board of Relief, 67 Minn. 436, 439, 70 N. W. 3, 4. The character of that lien and its limitations are determined by the statute and not by the mortgage. 'The remedy on the mortgage as a security is exhausted by a foreclosure.' Winne v. Lahart, 155 Minn. 307, 310, 193 N. W. 587, 589, 34 A. L. R. 844.

"It follows that, whatever right the mortgagee has under the mortgage to collect rents, it is terminated by the foreclosure sale."

This court has supported its conclusions in Gardner in the recent case of Woodmen of World Life Ins. Society v. Sears, Roebuck & Co. 294 Minn. 126, 132, 200 N. W. 2d 181, 184 (1972) :

"Unlike the separate but contemporaneous instruments of assignment in the instant case, the assignment of rents in Gardner was made in the mortgage instrument itself. This is only a distinction in form, for in substance both instruments here were supported by a single consideration and were integral parts of a single financing arrangement."

Further, in language directly applicable to the facts presented here:

"It is the settled law of this state, under its lien theory of mortgages, that a mortgagor during the period of redemption from foreclosure retains his right of ownership, including the

right to possession and the right to rents and profits * * *."
294 Minn. 131, 200 N. W. 2d 184.

In essence, appellant Citizens (mortgagee) would have us
ignore this developmental case law and adopt its theory that the
1969 amendment to Minn. St. 559.17 should be construed to allow
its possession and control of rents and profits between the fore-
closure date and the expiration of the period of redemption. In
support of this construction appellant relies upon statutory
language and the case of Farmers Trust Co. v. Prudden, *supra*.
It appears, however, that both are easily distinguished to refute
appellant's contentions.

From the language of the statute, it appears that the amend-
ment could only have the effect of providing the mortgagee with
additional security for the mortgage debt itself, especially from
the phrase "as additional security for the debt secured by the
mortgage." It is illogical to assume from this patently unambigu-
ous language that the legislature intended something more than
the codification of developed case law.

Furthermore, the Prudden case involved mortgaged property,
the value of which depreciated greatly between the time of the
mortgage and the assignment of rents 2½ months later. A fur-
ther assignment approximately 8 months later was held to be
a separate and distinct instrument executed in exchange for new
consideration, i.e., the extension of the mortgage term. The
appellant may not successfully rely upon Prudden when the facts
there are so totally distinguishable.

Not only is case precedent wholly in favor of respondent, but
an interpretation of the 1969 amendment also would support re-
spondent's position. Further, a consideration of the facts
presented here leads one to conclude, from the terms of the
mortgage and the assignment themselves, that the parties could
not have contemplated any other result. The instruments pro-
vided that upon full satisfaction the rights under the documents
would be terminated; there is conclusive evidence that there was

no deficiency in the foreclosure sale price, and thus Cross is entitled to possession.

■ The cases discussed above indicate that a mortgagee in possession is entitled to the possession of the premises until such time as the mortgage is satisfied, and that his interest as a mortgagee in possession is terminated by this satisfaction. Undoubtedly, a foreclosure sale for the full amount of the indebtedness extinguishes the mortgage debt. See, Woodmen of World Life Ins. Society v. Sears, Roebuck & Co. *supra*, and Gardner v. W. M. Prindle & Co. *supra*.

It is difficult to discern how appellant may circumvent the effect of this precedent by reliance upon cases in which there was no full satisfaction of the debt. See, Taylor v. Slingerland, 39 Minn. 470, 472, 40 N. W. 575, 576 (1888), to the effect that "if the mortgagee got possession peaceably, he could defend his possession upon the mortgage alone." Obviously, despite the initially peaceable possession of Citizens, the fact that the mortgage was subsequently extinguished by virtue of the foreclosure prevents reliance upon this language.

Finally, there is no merit in respondent's demand contention that this court should direct extension of the redemption period an additional 6 months. Since the rents and profits have been held in a separate bank account, out of which taxes have been paid, and a separate action for an accounting has now been instituted, it is clear that there has been no suspension or denial of the right of redemption during the period claimed.

Affirmed.