**Arden EWERT and Helen Ewert, Respondents,**

v.

**Gene ANDERSON, et al., Appellants.**

**No. C6–84–898.**

Court of Appeals of Minnesota.

Dec. 18, 1984.

Craig S. Hunter, Park Rapids, for respondents.

John E. Mack, New London, for appellants.

Considered and decided by PARKER, P.J., and SEDGWICK and LESLIE, JJ., with oral argument waived.

## OPINION

PARKER, Judge.

Gene Anderson and his parents, Mabel Grace Anderson and Ray Anderson, appeal from a judgment dated February 16, 1984. They appeal from that judgment despite the entry of a corrected judgment on March 5, 1984. Proof of service of the motion for that order has been filed. We treat this as an appeal from the corrected judgment.

Appellants raise as issues the trial court's award of a judgment greatly in excess of the ad damnum clause of the complaint, the deprivation of possession of agricultural land during the redemption period after foreclosure, the conclusion of law that a six-month redemption period was applicable, and the extent of the judgment against defendant Ray Anderson. They also seek a determination of appropriate credits to be applied to an equitable mortgage. We affirm in part, reverse in part, and remand to the trial court.

## FACTS

There was no transcript or agreed-upon statement of facts submitted, nor were post-trial motions brought by appellants. Therefore, we must accept as correct the trial court's findings of fact.

In late 1982 and early 1983 appellants Mabel Grace Anderson and her son, Gene Anderson, entered into a series of agreements and a contract for deed with James Lund for the purchase of real property in Douglas County, Minnesota. The real property was known as the "Peterson farm" and exceeded ten acres in size. The agreements gave Lund security interests in the machinery and crops, in the cattle to the extent of $15,000, and in all sums invested in the property and farming operation.

James Lund subsequently assigned all of his interest in the real and personal property, including the security interests, to Arden and Helen Ewert.

During the relevant time period, Mabel authorized Gene to act for and bind her in all matters relating to the Peterson farm. Gene's agency authority, which was express, implied, apparent and by estoppel, was made known to the Ewerts. Gene represented to the Ewerts that any investment they made in the property and farming operation would be secured by the machinery, crops, and land involved.

The Ewerts loaned money to Gene and Mabel to satisfy certain obligations related to the Peterson farm. To secure the loan Mabel and her husband, Ray Anderson, issued to the Ewerts a quit claim deed covering the real property portion of the farm. This deed was intended as an equitable mortgage between the parties for the loan, which was comprised of two notes in the amounts of $50,000 and $5,285.48. Both notes drew interest at 14 percent, and their respective remaining balances as of August 8, 1983, were $38,525.06 and $5,644.79.

By the contract for deed, Mabel and Gene agreed to pay certain obligations. These payments were not made. In reliance on their security interests, the Ewerts made those payments.

The Ewerts took over the farming operation with the consent of Gene and Mabel in May 1983. In June 1983 the Ewerts filed suit against Gene, seeking an injunction to keep him from exercising any control over the operation, $41,216.62 on the past due notes, and any additional accounting the court found necessary. The complaint was amended to include Mabel and Ray, but the ad damnum clause was never amended. A

temporary restraining order was issued and continued with the consent of Gene and Mabel until they filed their brief to the trial court in December 1983. Throughout that period Gene and Mabel neither demanded possession of the property nor indicated they would suffer damages because of their lack of possession.

As of January 1, 1984, the Ewerts had invested $173,482.11 in the farming operation in reasonable reliance that their investment was secured. The amount expended was reasonable and necessary to maintain the operation.

The Ewerts have shown that if the Andersons were allowed possession of the property involved, there is a substantial likelihood that they might damage the Ewerts' security interests in the personal property or commit waste, permissive or otherwise, to the real property. The Andersons have not shown that they have suffered any damages from not having been in possession of the property.

The parties agreed that all relevant issues between them could be decided as part of this action. After a trial, the trial court awarded judgment against Gene, Mabel, and Ray Anderson, of which the relevant portions are:

(1) $173,482.11 for expenses relating to the farming and livestock operation, plus interest; .

(2) foreclosure of the equitable mortgage subject to the Andersons' right of redemption within six months;

(3) foreclosure of the Ewerts' security interests in the machinery and crops, the amount received from the sale to be applied to the mortgage; and

(4) foreclosure of the Ewerts' security interest in the cattle, the amount received from the sale to be applied to the security interest in the cattle and any remainder to be applied to the mortgage.

## ISSUES

1. Was the evidence sufficient to support the trial court's award of damages greatly in excess of the ad damnum clause of the complaint where issues beyond the complaint may have been tried with the consent of the parties, without a motion to amend?

2. If respondents (mortgagees) had possession of the Peterson farm during the period of redemption, are appellants (mortgagors) entitled to credit for profits to be applied against the equitable mortgage?

3. Did the trial court err in its conclusion of law that a six-month period of redemption was applicable to the real property, which was more than ten acres in size?

4. Did the trial court err in finding Ray Anderson liable for the entire judgment when his only apparent legal involvement was signing a quit claim deed covering the real property?

## DISCUSSION

### I

Appellants argue that the trial court erred in awarding a judgment of $173,-482.11 when the complaint requested $41,-206.12, the balance due on the two notes and alleged outlays "in excess of $40,000 in payments in support of the operation." The ad damnum clause sought "any additional accounting between the parties as may be necessary," and no attempt was made to amend the complaint. Respondents filed a trial statement of issues with the court, which apparently refers to the operational outlays in defining an issue as follows:

2. What is the nature of and balance due on the equitable mortgage evidenced by the quit claims deeds from Mabel Grace Anderson and Ray Anderson to the plaintiff?

■ The general rule is that the plaintiff's recovery is not limited to the amount stated in the complaint unless the defendant is prejudiced. *Ahrenholz v. Hennepin County*, 295 N.W.2d 645, 647 (1980) (citing *Young v. Hansen*, 296 Minn. 430, 436, 209 N.W.2d 392, 396 (1973)). *See also* Minn.R. Civ.P. 54.03 ("[e]xcept as to a party against whom a judgment is entered by default, every other judgment shall grant the relief

to which the party in whose favor it is rendered is entitled").

■ Appellants claim they did not know they might be liable for an amount as high as that awarded by the trial court because the theory on which it is based was neither pleaded nor presented at trial. As we have seen, it was pleaded in general terms, and the file reflects receipt of exhibits evidencing operational outlays in the exact amount ordered. Respondents argue the trial court's action is justified by its finding that the parties agreed that all relevant issues between them could be decided in this action. They contend that their entitlement to expenses for running the farming operation was such an issue. We agree with respondents, but that does not resolve the problem.

While respondents placed an accounting of their farming expenses into evidence at the trial, the receipts were not shown. One-half of a ledger sheet is not an accounting. Without a transcript of the proceedings or written stipulation, it is impossible for this court to know exactly what the parties agreed to or what issues were raised at trial. Thus, we cannot determine if appellants were prejudiced. Therefore, we remand to the trial court for further proceedings, which might include: more complete findings of fact as to the evidentiary basis of its award, including an accounting of receipts from the sale of products of the farm; a motion to amend the complaint to conform to the evidence; or another hearing, if necessary, to allow appellants to present evidence on the issue of their liability for respondents' net expenses in running the farming operation.

## II

Minn.Stat. § 559.17, subd. 1 (1982), states in pertinent part:

A mortgage of real property is not to be deemed a conveyance, so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure, except as permitted in subdivision 2.

This statute and its predecessors have long been interpreted to mean that during the period of redemption, the mortgagor retains his rights of ownership, including the right to possession and the right to profits. *See, e.g., Woodmen of World Life Insurance Society v. Sears, Roebuck & Co.,* 294 Minn. 126, 131, 200 N.W.2d 181, 184 (1972); *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 276, (8th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984).

■ The mortgagor's right to possession is limited by Minn.Stat. § 561.18 (1982), which allows the court to restrain the commission of waste on the property. Waste by a mortgagor during the redemption period will be enjoined when it "may so impair the value of the property as to render it insufficient, or of doubtful sufficiency, as security for the debt." *Gardner v. W.M. Prindle & Co.,* 185 Minn. 147, 152, 240 N.W. 351, 353 (1932). *See also Woodmen of World Life Insurance Society,* 294 Minn. at 131, 200 N.W.2d at 184 (the mortgagee may be granted the extraordinary remedy of a receivership sequestering profits only to prevent waste or otherwise to protect and preserve the mortgage security). Thus, even though mortgagees may be allowed possession of the property during redemption, profits received must be applied to the mortgage debt.

Despite the court's finding of waste and the Ewerts' entitlement to possession of the Peterson farm until December 1983, there is no indication of which party has possession during the redemption period, nor is it clear whether the facts still justify denial of possession to appellants during this period. Thus, we remand for a finding as to who was in possession and who was entitled to possession after December 1983.

■ If, as the record implies, the Ewerts had possession during the redemption period, the Andersons, as equitable owners, are entitled to credit for any profits earned. Therefore, if it is found on remand that the Ewerts have been in possession, the trial court should provide for an accounting of

profits according to accepted standards of farming accountancy.

### III

■ In its conclusion of law number 7 the trial court indicated the Andersons had a six-month right of redemption. Minn. Stat. § 580.23, subd. 2(c) (1982), provides for a 12-month period of redemption if the mortgaged premises exceed ten acres in size. There is no dispute that the Peterson farm exceeds the statutory size. Therefore, the court's conclusion of law number 7 should be amended to comply with the statute.

### IV

■ The record indicates that Ray Anderson's only legal involvement in the Peterson farm was release of any interest he might have had in the property through a quit claim deed. Yet the trial court's judgment is framed so as to hold Ray liable for the entire judgment. Respondents agree that the findings do not support a judgment against Ray beyond his personal interest in the real property. Therefore, the judgment must be amended to limit Ray Anderson's liability to that extent.

### DECISION

We remand for additional findings on the issue of the extent of respondents' entitlement to expenses for operating the farm; for a finding as to which parties were in possession and which were entitled to possession after December 1983; and for an accounting of profits, if the Ewerts were in possession during the 1984 growing season.

The judgment should be amended to allow appellants a 12-month period of redemption and to limit Ray Anderson's liability to the extent of his interest in the real property known as the Peterson farm.

Affirmed in part, reversed in part, and remanded.